[No. 13333.   Department One.   August 30, 1916.]

J. D. VAN BUREN *et al.*, *Appellants*, v. E. C. TRUMBULL *et al.*, *Respondents.*[1]

EASEMENTS—RIGHT TO INGRESS AND EGRESS—DEDICATION—ESTOP-PEL—RIGHTS OF GRANTEES.  Since the dedicator of a plat selling lands abutting on a dedicated street cannot defeat the grantee's right to an easement in the street, common grantees claiming through him cannot, as between themselves, deny the full effect of the deed or question the right of ingress and egress.

SAME—STREETS—DEDICATION—VACATION—ABANDONMENT.  Rem. & Bal. Code, § 5673, vacating county roads which remain unopened for public use for five years, has no application to and does not affect private rights of easement acquired by deed by an abutter upon a street in a dedicated plat.

SAME—EXTINGUISHMENT—STREETS—ABANDONMENT.  The easement of an abutting owner in a street in a dedicated plat is not lost by abandonment or nonuser, however long continued, until the time arrives when it is required for actual use; hence the right is not lost by the fact that half of the road had been fenced by the owner on the opposite side while ingress and egress had been found over lands of other parties.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered August 19, 1915, in favor of the defendants, in an action to quiet title, tried to the court.  Affirmed.

*Williamson & Luhman*, for appellants.

*H. J. Snively*, for respondents.

CHADWICK, J.—Many years ago "A" laid out an addition to the city of North Yakima, known as the St. Paul Acre Lots.  The plat was filed in May, 1888, and shows a street through the center of the tract, known as Clark street. Appellants and their predecessors in interest bought on one side of Clark street.  Respondents bought on the other side of the street.  All parties bought with reference to the plat. At the time respondents bought their land and went into

[1] Reported in 159 Pac. 891.

possession, plaintiffs or their predecessors had fenced all that part of Clark street abutting their property.

Since respondents settled upon their land, the question of title to Clark street had been the subject of some negotiation among the parties. For a time respondents found a way out to the established streets over the property now owned by one of the appellants. Differences arose. Feeling finally became so acute that it led to open warfare. Appellants, on whose land respondents had been accustomed to travel, closed and locked the gate, and finally brought this action to quiet title to the land abutting their lots and lying within the bounds of Clark street as extended on the plat. They rely upon the statute of limitations, contending that Clark street was never opened or improved by the public and became, in virtue of the act of 1890, which this court held to apply to city streets, *Murphy v. King County*, 45 Wash. 587, 88 Pac. 1115, as against the public, subject to the private right of any party who may have taken possession of it and held it for the statutory period.

Appellants rely primarily upon *Smith v. King County*, 80 Wash. 273, 141 Pac. 695, and *Norfolk v. Nottingham*, 96 Va. 34, 30 S. E. 444. They insist the reasoning of the latter case was adopted in the former. In our own cases the sole question considered was whether the public had any interest in streets that had been theretofore dedicated but not opened or worked by the public for a period of five years. The question of rights between abutting owners or those who had purchased with reference to the plat was not passed upon. Indeed, it would seem that the writer of the opinion in the *Smith* case had the question in mind and, by apt expression, reserved it. It is said:

"The purchasers are not parties to this litigation and their rights cannot be affected by the result. Their rights, if any, depend upon the doctrine of estoppel. Moreover, they or their successors in title may have since compromised or lost the right so acquired. These questions we are not

called upon to consider or decide. The estoppel, if any, operates only in favor of those who have been misled to their injury, and they alone can set it up."

citing the Virginia case:

"The purchasers of lots are not parties to this litigation, and their rights can in no respect be affected by its results. It may be that the dedication was complete as to those who purchased lots prior to the public sale on the 21st of September, 1870, or as to those who purchased on that day before the announcement was made by the auctioneer, to which we have referred. It may be that the owners of lots so purchased, though they acquired a complete right to the use of the streets as designated upon the maps at the time their respective purchases were made, have since compromised or lost the right so acquired. We are not called upon to consider or decide any of these questions. We are only concerned with the rights of the parties before us."

With the right of the public eliminated, we have the reserved question squarely before us. No cases going to the exact state of facts with which we have to deal have been cited by counsel, nor have we, after considerable search, been able to find any. Resort must be had to fundamental principles. One who plats property upon which streets have been laid out, and who sells property with reference thereto, cannot, by an act of his own, defeat the right of his vendee to use the platted streets for the purposes intended. He is estopped to deny or impeach rights thus acquired. Elliott, Roads & Streets, § 1191; Herman, Estoppel, §§ 1145, 1146, 1147; *Cincinnati v. White*, 6 Pet. 431; *Weisbrod v. Chicago & N. W. R. Co.*, 18 Wis. 40; *Boise City v. Hon*, 14 Idaho 272, 94 Pac. 167.

"The doctrine has for its object the suppression of fraud and the enforcement of honesty and fair dealing. Where, therefore, lots have been offered for sale, and have been purchased in accordance with a map or plat upon which streets are made to appear, it is presumed that the purchase was induced, and the price of the lots enhanced thereby, and the seller is estopped to deny the right which has thus been ac-

quired. To permit him to sell the lots under such circumstances, and then to close the streets, would be to permit him to perpetrate a fraud upon his vendees." *Norfolk v. Nottingham, supra.*

The court continues, and this is the expression upon which appellants hang their hopes:

"Such an estoppel, however, operates only in favor of him who has been misled to his injury, and he alone can set it up. This proposition would seem to flow as a logical sequence from the principle upon which estoppel rests, and is abundantly sustained by authority. See *Ketchum v. Duncan*, 96 U. S. 659."

This we shall consider later in this opinion.

Now it would seem if the vendor or dedicator of land could not, by any act of his own, deny to his vendee a right to at least an easement in the property theretofore dedicated as a street, that one claiming by, through, or under him could not do so. As between the grantees of a common grantor who had platted and sold land, rights are to be primarily determined by reference to the right of the grantor. That is to say, if the common grantor could not deny the full effect of his deed and the right of ingress and egress, his grantee could not do so.

The statute vacating streets that had not been opened to the public reads as follows:

"Any county road or part thereof, which has heretofore been, or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be, and the same is hereby vacated, and the authority for building the same barred by lapse of time." Rem. & Bal. Code, § 5673.

It makes no mention of private rights and cannot be held to, in any way, affect them. Having failed to take account of situations where lots had been, or might thereafter be, sold in platted additions, the logical assumption must be that the legislature intended no more than to waive the in-

terest of the public in so far as it was represented by the municipality. This belief finds some support when we consider that, at the time the statute vacating unopened highways was passed, we had upon the statute books, and have now, a law making the vacation of platted property a matter entirely discretionary with the county commissioners, to be granted only upon such conditions and restrictions as they might deem reasonable and for the public good, and, we may add, the statute implies—without doing violence to private rights. Rem. & Bal. Code, §§ 7844-7846.

It may be seriously questioned whether it was within the power of the legislature to so legislate as to take away a right of easement acquired by deed from the owner of platted property. A right of private easement may exist although the public right of easement be destroyed or extinguished. Without resorting to the constitutional question, but keeping close to the statute, having in mind its letter and its spirit, we may, however, hold that private rights of easement were not affected by the act, and that they remain as if the act had not been passed. Such is the fair implication of the act, and it is not inconsistent with its letter to so hold.

The rule governing before the adoption of the statute of 1890 is clearly stated in Angell on Highways (3d ed.), § 326 —note:

"Until the time arrives when a street is required for actual public use and when the public authorities may properly be called upon to open it for such use, no mere non-user, however long continued, will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public."

. If we eliminate the public right, the rule would read, subject to the mutual rights of the various grantees who trace their title to the common grantor, who is ever restrained by the bar of estoppel from denying the right of easement to his grantees.

The rights of parties owning land abutting a vacated highway or street are well stated in *Holloway v. Southmayd*, 139 N. Y. 390-404, 34 N. E. 1047, 1052. The court, in discussing a case where no formal dedication had been made (the principle is the same as where a street has been vacated), said:

"The fact in that case was that the owner of the tract made conveyances of portions, bounding them upon intended streets not yet laid out by legal authority, but treating them as located if the map of the public authorities had been extended. The decision of the referee was upheld, as being supported by the authorities, that these conveyances, although not amounting to a dedication of the lands embraced in the supposed streets to the use of the public, or constituting them public highways, created an easement in favor of the grantees of the lots abutting thereon; which as between them and their grantor, and those deriving title under him, entitled them to have the lands described in the conveyances as streets and avenues left open as such for the benefit of their lots."

and in discussion of the particular case:

"If, by act of law, the public right, or easement in the highway, has ceased; there is no reason for saying that, as against the grantor of the abutting land, any right to the continuance of private easements has been lost to the grantee. At least, the principal argument for the other view is that the possible discontinuance of the highway was a contingency which the parties must, or should, have considered. But is that quite just? Had the grantee not the right to assume that, with the fee of the highway in the grantor, in conveying lands with boundaries given upon the highway, together with all the appurtenances, easements, advantages and privileges, he intended to and did, impliedly, if not in express terms, warrant to his grantee, as far as he was concerned, the continuance of the open space in front of the land, for all the beneficial purposes which it could subserve, even if the public easement should cease. When it is said that the land of a highway, which has been discontinued, reverts to primary conditions of ownership, obviously it is to be understood that such ownership is not thereby relieved of burdens created by the original owner."

So in *Portland v. Whittle,* 3 Ore. 126-128, it is said:

"When a man or company of men own land, and lay it off into blocks and streets, and sell lots abutting on a street so laid off, so that the street is a convenience to the purchasers of the lots, those acts amount to a dedication of the land so laid off into streets, and the persons so laying it off can not recall it or in any manner prevent its being used as streets.

"Such persons are barred or estopped by their acts, and all persons or corporations subsequently claiming under them are equally bound."

Referring again to the *Smith* case, counsel say that respondents cannot claim an estoppel as against appellants unless they have been misled to their injury. This argument presupposes a right in the appellants that, as we view the case, does not exist; but if there be a technical right as against the public, it vanishes under the peculiar facts in this case. Respondents and their grantors were misled to their injury. They bought with reference to the plat. They no doubt paid more for their lots than they would have paid but for the platted street—if indeed they would have bought at all. In *Bayard v. Hargrove,* 45 Ga. 342-350-353, will be found a complete argument against the contention of the appellants:

"But there is a clear distinction by the authorities, and in the nature of the case, between a mere right of way seized by the public or dedicated to the public and the case made by this record. Here is a contract. The owner of the land proposes to lay out a town. He makes up a map, with the lots, streets, lanes, etc., marked upon it, and he not only agrees to dedicate the streets to the public, but he *sells the lots* abutting upon the streets. The public accepts the streets, the lot owners buy the lots under these representations, and the owner of the soil gets a consideration for his dedication in the increased price of his lots.

"In this case there are three parties to the transaction, the owner of the land, the public and the purchasers of the lots. And the whole affair is a matter of contract, for a valuable consideration. Especially is it true that there are more parties at interest than the public and the dedicator. The

purchasers of the lots acquired a contract right in the street. They acquired the right to use it themselves, and the right to have the street open to all others whom they may desire to use it. This title is gone from the owner, except with the consent of the public and the lot owners. If the public were to forfeit or abandon it, this would not affect the rights of the lot owners. The owner of the land has parted with his right ever to assert his right to the soil to the injury of the easement. . . .

"In cases like this, of a sale of lots upon a street dedicated by the vendor of the lots, there is an element that does not exist in the cases referred to by the counsel for the defendant in error. . . .

"That element is, that this street was one of the inducements of the vendees to buy. The price of the land to the vendor was increased by his dedication of the street. Its precise width and precise uses to which it shall be put are material to the owner of the abutting lands, and not to the original proprietor."

We find no error, and the judgment is affirmed.

Morris, C. J., Mount, Fullerton, and Ellis, JJ., concur.