[No. 30024.   Department One.   December 27, 1946.]

A. B. THISIUS *et al., Appellants,* v. TORVIG SEALANDER,
*Respondent.*[1]

*J. P. Tonkoff* and *Chalmer G. Walters,* for appellants.

*Halverson & Applegate,* for respondent.

[1]Reported in 175 P. (2d) 619.

SCHWELLENBACH, J.—This is an appeal from a judgment on the verdict for the defendant in an unlawful detainer action brought to obtain possession of a building leased by plaintiffs to defendant.

The complaint alleged that A. B. Thisius and Martha Thisius, his wife, were the legal owners of a four-story cold storage warehouse located in Yakima; that, in June, 1944, Thisius sold the property under a real-estate contract to Verne Tasker; and that, in December, 1945, Tasker assigned the contract to Tasker-Brackett, Inc., a Washington corporation.

That prior to the sale of the property, Thisius, on June 26, 1945, entered into a lease agreement with Torvig Sealander, who has occupied the premises since that time, but willfully and intentionally did violate the terms of the lease and permit waste on the premises, in that he failed to lubricate the cold storage machinery properly and used a poor grade of lubricants, resulting in certain equipment being damaged and destroyed beyond repair; and that he failed and neglected to operate the heating plant properly.

That the defendant continuously, willfully, and knowingly overloaded the floor space, causing each floor to sag and thus weaken the building, and three of the floors collapsed as the result of such overloading; that he failed to keep competent engineers, and, in 1945, failed to employ any engineer to maintain the cold storage equipment; that he did not abide by certain ordinances of the city of Yakima as to posting in a conspicuous place in each story of the building the loading capacity of the floor space.

That, in March of 1945, Verne Tasker caused to be served upon defendant a notice of forfeiture for his failure to employ a competent engineer to maintain the plant, and that he failed to procure an engineer until the last day allowed in the notice of forfeiture; that thereafter, during the month of November, 1945, Tasker caused another notice of forfeiture to be served upon the defendant, due to his willful and intentional violation of the terms of the lease. The plaintiffs further alleged that they were entitled to possession on December 17th and to damages in twice the

amount of the rental, which was five hundred dollars a month, together with damages for the destruction of the floors in the amount of ten thousand dollars, the sum of one thousand dollars for damage to the office space, and five thousand dollars for damage to the cold storage equipment and machinery, the damages asked for totaling sixteen thousand dollars.

By answer, the defendant admitted the existence of the corporation, the ownership of the property in Thisius; that a lease agreement had been entered into; that he had been in possession since June 26, 1942; and that a notice of forfeiture had been served upon him. But defendant denied that he had committed waste or had violated any of the terms of the lease. He denied the allegations as to damages for double rent, and also denied that the building had been damaged to the extent of sixteen thousand dollars. Affirmatively, the defendant alleged that, on April 14, 1945, he exercised his option to renew the lease for three years, and that, on July 18, 1945, he paid plaintiffs three thousand dollars as rent up to April 15, 1946; that he performed all the covenants of the renewed lease; that Tasker interfered with his quiet enjoyment under the terms of the lease, requiring him to employ a watchman at $216 a month; and that plaintiffs failed to keep the premises in repair, to his damage in the sum of $1,249.60. These matters were all denied by the plaintiffs.

The case was tried to a jury, which rendered a verdict for the defendant. A motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied. The plaintiffs appealed.

The building was constructed by Thisius in 1935. It is a warehouse, a hundred by a hundred forty feet, consisting of a basement and three stories. He installed a refrigeration plant in the southeast corner of the basement. Sealander leased the premises in 1937 and 1938. The next year, he moved to another location, but went back in 1940. He has been there ever since. On June 26, 1942, the lease in question was entered into. The provision for forfeiture therein follows:

"Time and manner of payment by Lessee of said rent or sum reserved, in payments in advance as herein agreed, and strict performance by the Lessee of the terms, conditions and covenants, expressed or implied in law herein contained, is now agreed to be, and is hereby made, of the strict essence of this lease, and if default shall be made in the payment of rent, or any part thereof, or if default shall be made in any of the covenants, promises, or agreements herein contained to be kept by said Lessee, it shall be lawful for Lessors, at their election to terminate this lease; *provided, however,* that before such termination and cancellation shall be effective the Lessors shall served upon Lessee, personally, a written notice specifying the particular defaults claimed by said Lessors, and requiring the Lessee in the alternative to remove said defaults within thirty days or to vacate said premises, and it is understood and agreed that said notice of cancellation shall not be effective unless the Lessee shall fail to remove said defaults and comply with the lease and until the expiration of the thirty days from the service of said notice. It is further agreed that the method herein provided for shall be in lieu of the statutory remedies for cancellation of this lease."

On April 14, 1945, Sealander served notice that he was exercising his option to renew the lease for a three-year period. July 17, 1945, he issued a check to Thisius and Tasker, in the amount of three thousand dollars, to cover rent up to April 15, 1946.

Meanwhile, on July 27, 1944, Thisius executed a contract of sale of the premises to Tasker, subject to the lease to Sealander. The purchase price was sixty thousand dollars, on which a down payment of one thousand dollars was made. The balance was to be paid by assuming a mortgage of twenty-five thousand dollars in favor of Sealander and by paying the remaining thirty-four thousand dollars in the following manner: four thousand dollars on or before September 15, 1944, five thousand dollars at the time of surrender of possession of the premises by Sealander, and five thousand dollars each year thereafter until the entire purchase price is paid.

The building was constructed with a reinforced concrete floor in the basement. Some forty odd wooden columns,

ten by twelve inches, extend from the basement, through the various floors, to the roof. Each column was set in a concrete pier which extended about eight inches from the floor. One morning in the early part of November, 1945, one of the columns split and the concrete in the supporting pier crumbled on two sides, so that, after the accident, the column was resting on a sort of wedge-shaped support. As a result, the three floors sagged at this point over a distance of approximately twenty-eight feet. The accident occurred in the engine room. Directly above was the office, and over that, on the other two floors, were piled boxes of apples. Emergency braces were put up, removing the immediate danger and restoring the sagging floors to a somewhat nearly normal condition. Two or three days later, the appellants caused to be served on the respondent the second notice of forfeiture. The notice was as to default in the following covenants of the lease: ordinances, repairs, maintenance, engineer, and indemnity. The allegations concerning the various defaults followed the wording of the lease very closely. It was subject to the thirty-day provision quoted above.

Tasker-Brackett was incorporated December 5 or 6, 1945, and, on December 6th, Tasker assigned his interest in the real-estate contract to the corporation.

Most of the testimony at the trial had to do with the collapse of the floors. Appellants' witnesses testified that it was due to the overloading of the warehouse with the apples. Respondent's witnesses stated that it was due to an inferior mix of concrete in the pier supporting the column, which cracked and caused the collapse. His witnesses also claimed that Tasker, being in the storage business, was primarily interested in getting Sealander out so that he could take possession himself. As stated, the jury decided in favor of Sealander.

The following are the assignments of error made by appellants: The court erred in refusing to admit evidence under the notice of forfeiture, in confining their evidence to overloading under the notice of forfeiture, in requiring them

to prove their case by full, clear, and strict evidence, and in refusing to give their proposed instructions.

■ At the beginning of the trial, the court ruled on the alleged defaults contained in the notice. The questions of proper care and maintenance of the refrigeration equipment and of the employment of a competent engineer, or engineers, were withdrawn from the jury for the reason that the language of the notice was too indefinite and not sufficient to apprise the defendant of the defaults claimed in order to give him an opportunity to correct them within the thirty-day period. The test for such a notice is found in *Byrkett v. Gardner*, 35 Wash. 668, 77 Pac. 1048, at p. 674:

"When the nature of the case is considered, it is at once apparent that, in so far as the action is founded on the fourth subdivision of the statute quoted, the case turns on the sufficiency of the notice to quit. If the breaches of the conditions of the lease, upon which the lessors rely to work its forfeiture, are recited in the notice in terms too general, or too indefinite and uncertain, to inform the lessee of the acts or omissions constituting the breach, so that he can have no opportunity to correct the acts or supply the omissions, it is plain that no sufficient complaint of unlawful detainer can be founded thereon. The notice cannot be aided by particularity in the complaint. The lessee is given, by the statute, the alternative of complying with the conditions and covenants of the lease, or quitting the premises, and in order to give him the opportunity to exercise his right of choice, the notice must specify with particularity the conditions and covenants which he has failed to keep or perform; a general recital of the conditions and covenants of the lease, followed by the statement that the lessee has failed to keep 'each and all' of such conditions and covenants, cannot be sufficient."

Without overburdening this opinion by detailing the specific allegations contained in the notice of forfeiture, we feel that the court's ruling, withdrawing the disputed alleged forfeitures from the consideration of the jury, was correct. The main question to be determined was the damage to the building due to the alleged overloading, and this was submitted to the jury. Because there was no evidence of a violation by the defendant of any city ordinance or regula-

tion, that question was withdrawn from the jury also. That ruling was correct.

■ The court dismissed from the case, as parties plaintiff, Thisius and wife. This was an action for possession of real estate. Thisius and wife had contracted to sell to Tasker. They were not entitled to and could not be placed in possession of the premises in the event of a verdict for the appellants.

The appellants claim error in the failure of the court to give their proposed instructions Nos. 1, 2, 3, 5, and 12. With the exception hereinafter noted, the rights of all parties were fully protected by the instructions given to the jury. We find no error appearing in the trial as to the admission of testimony. However, we are of the opinion that a new trial should be granted because of error in giving certain instructions.

The trial court gave the following instructions:

Instruction No. 7: "The burden is upon the plaintiff to establish, by evidence that is full, clear and strict, the material allegations of its complaint essential to a recovery, and in the event of recovery, the amount thereof."

Instruction No. 12: "You are hereby instructed that the plaintiff in this case is endeavoring to enforce forfeiture of the lease held by the defendant, Torvig Sealander. I hereby instruct you that a forfeiture is not favored and before you can find that the defendant has forfeited his lease you must find by full, clear and strict proof and evidence submitted to you by the plaintiff that the defendant has violated his lease and has failed to remedy such violation within a period of thirty days after specific notice of the violation.

"On this point I instruct you that the plaintiff must prove by full, clear and strict proof that the defendant so overloaded said building beyond its proper loading capacity to the point where such overloading, and such overloading alone, caused the floors to sag and the column to split and break. You must further find that the defendant within thirty days after November 16, 1945, the date notice of forfeiture was served upon him, failed to remove such overload from that portion of the building where the breaking of the pier and the sagging of the floor occurred. I further instruct you that if you find that the failure of the foundation or pier caused or contributed to the sagging of the floors or the

breaking of the pillar, your verdict must be for the defendant. I hereby instruct you that full, clear and strict proof is that proof which has a greater weight in your mind than the preponderance of the evidence as herein defined."

These instructions were evidently given on the authority of *Income Properties Inv. Corp. v. Trefethen*, 155 Wash. 493, 284 Pac. 782. In that case, the defendants leased property to the assignor of the plaintiff for four years. The total rental would have amounted to $158,700. The tenant had paid the owner fifteen thousand dollars as consideration for the lease. About a month after the lessee went into possession, it demanded that the lessors make certain repairs according to the terms of the lease. The lessors made part of the repairs, but failed to comply with the demands of the lessee in full. The lessee quit paying rent and notified the lessors that it would offset the same against damages accruing through want of repairs. The lessors served notice to pay rent or quit, and then started an action under the unlawful detainer statute. The lessee then sought to restrain the lessors from prosecuting it so long as the damages for failure to repair were greater than the amount due for rent. After discussing the facts, we said, p. 504:

"Under such conditions, a forfeiture would be most inequitable and any action at law available to respondent, inadequate. Under the decree, appellants are not enjoined from maintaining an action for their rent at any time, but are only enjoined from maintaining a particular kind of action which would lead to a forfeiture until such time as they perform their part of the lease contract. In the unlawful detainer action, appellants do not seek to continue their contract and recover their rent, but to enforce a forfeiture; and forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of the legal right thereto."

It will be seen in that case that two separate actions were commenced: one, the statutory legal remedy of unlawful detainer, and the other, an equitable action to restrain the enforcement of a legal action until the landlords had complied with the terms of their lease regarding repairs. The two actions were consolidated for trial.

There is no question but that equity has a right to step in and prevent the enforcement of a legal right whenever such an enforcement would be inequitable. However, we are concerned here with the degree of proof necessary to establish a case in an unlawful detainer action. When the parties, in the case at bar, entered into their lease agreement, there was in effect Rem. Rev. Stat., § 812 [P.P.C. § 55-5], subd. (4):

"A tenant of real property for a term less than life is guilty of unlawful detainer either,— . . .

"(4) When he continues in possession in person or by subtenant after a neglect or failure to keep or perform any other condition or covenant of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than one for the payment of rent, and after notice in writing requiring . . . in the alternative the performance of such condition or covenant or the surrender of the property, served (in the manner provided in this act) upon him, and if there be a subtenant in actual possession of the premises, also upon such subtenant, shall remain uncomplied with for ten days after service thereof. Within ten days after the service of such notice the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform such condition or covenant and thereby save the lease from such forfeiture; . . ."

This statute became a part of the lease agreement. Forfeiture is an incident to the legal remedy granted under the statute. When a landlord establishes in a court of law that his tenant is guilty of unlawful detainer, forfeiture of the tenant's rights under the lease necessarily follows as an incident thereto. But in order to prove the defendant guilty of unlawful detainer under the statute, the landlord is only required to establish his case by a preponderance of the evidence. He is not required to assume the burden of establishing the material allegations of his complaint by evidence that is full, clear, and strict. That burden is too severe.

Furthermore, a tenant is entitled to relief from forfeiture even after judgment. Section 830, Rem. Rev. Stat. [P.P.C. § 55-41], provides:

"The court may relieve a tenant against a forfeiture of a lease and restore him to his former estate, as in other cases provided by law, where application for such relief is made within thirty days after the forfeiture is declared by the judgment of the court, as provided in this chapter. The application may be made by a tenant or subtenant, or a mortgagee of the term, or any person interested in the continuance of the term. It must be made upon petition, setting forth the facts upon which the relief is sought, and be verified by the applicant. Notice of the application, with a copy of the petition, must be served on the plaintiff in the judgment, who may appear and contest the application. In no case shall the application be granted except on condition that full payment of rent due, or full performance of conditions of covenants stipulated, so far as the same is practicable, be first made."

An examination of all the relevant statutes reveals that unlawful detainer is a legal remedy and that all that is required of the plaintiff is to establish his proof by a preponderance of the evidence. Because of error in giving instructions Nos. 7 and 12, the cause is remanded for a new trial.

MILLARD, C. J., ROBINSON, JEFFERS, and MALLERY, JJ., concur.