[No. 11801-1-III.   Division Three.   January 12, 1993.]

WALTER L. BARNHART, ET AL, *Appellants*, v. GOLD RUN, INC., ET AL, *Respondents*.

---

[2]The City's motion to strike the response of amicus curiae to its motion to enlarge time is granted.

*James S. Scott* and *Smith & Scott,* for appellants.

*Mark R. Fortier; John S. Moore* and *Velikanje, Moore & Shore Inc. P.S.,* for respondents.

THOMPSON, A.C.J. — Walter and Pauline Barnhart brought this action against their predecessor in interest and adjoining property owners to establish their right to use a strip of land platted, but never developed, as a private road. The Superior Court held Gale and Barbara Karspeck and Lillian Van Der Wel held title to the land in question by adverse possession. The court further held the Barnharts had a prescriptive easement over an existing road for purposes of ingress and egress to their property. The Barnharts appeal. Gold Run, Inc., the predecessor in interest, cross-appeals the court's denial of its request for attorney fees pursuant to the real estate contract. We affirm.

In 1935, John and Jana Anderson platted certain property in the Cliffdell area on the Naches River as Anderson's Summer Home Tracts. The plat shows a 30-foot right of way for a private road, adjacent to the northern perimeter of the tracts, dedicated for the use of the owners. The tracts include lots 29 and 30, now owned by the Karspecks, and lot 31, now owned by the Barnharts.

In 1949, Marie Harris owned lots 29 and 30. She later acquired lot 31. Mrs. Harris lived on lot 30 in a house which encroached on a portion of the platted road right of way. Other improvements were also within the right of way. The house and the other improvements have been in continuous use since 1949.

George Jefferson purchased lots to the west of Mrs. Harris' in 1949. He developed the roadway, as shown on the plat, from the west boundary of lot 29 to State Highway 410. About 1955, Mrs. Harris constructed a jeep road to the north of her house. This road connects with the road built by Mr. Jefferson, and has been used to access lot 31 since that time. It does not follow the platted road right of way.[1]

Mr. Jefferson subsequently transferred his property to his corporation, Gold Run, Inc. In 1973, Mrs. Harris sold lots 29, 30, and 31 to Gold Run, subject to all easements "shown in the chain of title, or in existence". In October 1983, Gold Run sold lot 31 to the Barnharts. Both the real estate contract and the deed, which the Barnharts received when they paid off the contract in late 1984, provided for an "easement for roadway for ingress to and egress . . . over and across the platted roadway, appearing in the plat of Anderson's Summer Home Tracts . . .".

In 1984, Gold Run sold lot 29 to Mr. Karcz; in 1985 it sold lot 30 to Mr. Karcz. Both transactions were made subject to

---

[1]The road which Mrs. Harris built is north of both platted lot 30 and the platted right of way. The subsequent transfers of lot 30 (Harris to Gold Run in 1973 and Gold Run to Karcz in 1985) included transfers of the triangular segment over which the house encroached and which the jeep road traversed. The record does not disclose when or from whom Mrs. Harris acquired title to the portion of the triangle north of the platted right of way.

"rights of way or easements shown on the plat or visible by inspection". Mr. Karcz forfeited on lot 29 in 1986, and Gold Run sold it to the Karspecks in 1988. Mr. Karcz quitclaimed lot 30 to Lillian Van Der Wel in 1988, who sold to the Karspecks that same year. The Karspecks' real estate contract with Ms. Van Der Wel also states it is subject to "rights of way easements shown on the plat or visible by inspection". The chain of title for lots 29 to 31 appears as follows:

| Lot 29: | Lot 30: | Lot 31: |
|---|---|---|
| 1949 Mrs. Harris | 1949 Mrs. Harris | 1949 Mrs. Harris |
| 1973 Gold Run | 1973 Gold Run | 1973 Gold Run |
| 1984 Karcz | 1985 Karcz | 1983 Barnharts |
| 1986 Gold Run | 1988 Van Der Wel | |
| 1988 Karspecks | 1988 Karspecks | |

In 1984, the Barnharts had lot 31 surveyed. The surveyor located the center line of the platted road right of way, and pointed it out to the Barnharts. In 1987, the Barnharts demanded use of the right of way from Mr. Karcz. In 1989, they brought in gravel without the Karspecks' permission, and widened the 15-foot existing road approximately 2 to 4 feet. The Barnharts commenced this action in March 1990 to determine their interest in the platted road right of way.

Based on these facts, the trial court concluded the Barnharts had a prescriptive easement for the 15-foot-wide road presently used as the access to lot 31. The court also concluded (1) the improvements built by Mrs. Harris were inconsistent with use of the 30-foot strip as a roadway; (2) her use of the strip was open, notorious, exclusive, and under a good faith claim of right; (3) such use continued for more than the time period required; and, therefore, (4) her successors in interest, the Karspecks, had title to the platted road right of way by adverse possession.

## THE APPEAL

The Barnharts contend the trial court erred when it held they had no interest in the original platted road right of way. We affirm. The undisputed evidence supports a finding the

location of the platted road right of way shifted to the existing road, due to a long period of use which predated the parties' ownership. *Curtis v. Zuck*, 65 Wn. App. 377, 829 P.2d 187 (1992).

The Barnharts rely upon *Burkhard v. Bowen*, 32 Wn.2d 613, 623, 203 P.2d 361 (1949) and *Van Buren v. Trumbull*, 92 Wash. 691, 694, 159 P. 891 (1916). There, the courts rejected the plaintiffs' claim of adverse possession over platted accesses which were never opened and affirmed the continuing validity of the defendants' easements. "[S]ince the dedicator of a plat could not defeat a grantee's right to an easement in the street upon which his land abuts, common grantees from him cannot, as among themselves, question the right of ingress and egress over the street as shown on the plat." (Italics omitted.) *Burkhard*, at 623 (quoting *Howell v. King Cy.*, 16 Wn.2d 557, 559, 134 P.2d 80, 150 A.L.R. 640 (1943)). *Van Buren* reasoned at page 694: "[I]f the common grantor could not deny the full effect of his deed and the right of ingress and egress, his grantee could not do so."

*Burkhard* and *Van Buren* are distinguishable from the facts here. The situation before this court is similar to that found in *Curtis*. In *Curtis*, the subdivision plat showed the intended location for a street, but the street was never opened in that location. A gravel road was ultimately constructed within and somewhat north of the platted location. The plaintiffs bought property on the north side of the platted street; the defendants bought property to the south. At the time of their purchase, the defendants were told the gravel road marked the northern boundary of their property. They therefore built their residence about 10 feet over the platted street. The gravel road encroached upon the southern portion of the lots owned by the plaintiffs.

The plaintiffs in *Curtis* filed suit to eject the defendants from the platted street and to quiet title to that portion of their property affected by the encroachment of the gravel road. The trial court refused. Instead, it divested the plaintiffs of their easement over the platted street occupied by the

defendants and granted the defendants a prescriptive easement over the gravel road encroaching on the plaintiffs' property. *Curtis*, at 380.

The plaintiffs appealed, arguing that *Burkhard* and *Van Buren* were controlling and ensured their right to use the street shown in the plat. *Curtis* affirmed the trial court. The court pointed out that the plaintiffs in *Burkhard* and *Van Buren* attempted to extinguish the private easements of adjoining landowners by affirmatively *excluding* them from their right to use the platted alley or street. In *Curtis*, there was no such attempt. Rather, "[t]he [plaintiffs] . . . attempt[ed] to enforce a private easement as platted, and in response, the [defendants] essentially assert[ed] that *the private easement they share[d] with the [plaintiffs] ha[d] simply shifted due to a period of long use which predate[d] both parties' ownership*." (Italics ours.) *Curtis*, at 382.

■ Similarly, the existing road here has long been used as a substitute for the platted road right of way. The Barnharts' predecessor in interest, Mrs. Harris, clearly evidenced an intent to abandon the right to use a roadway in the platted location. She used a house and other permanent structures in that area and constructed an alternate road for access to lot 31.[2] *See* 1 Washington State Bar Ass'n, *Real Property*

---

[2]The Barnharts are not aided by RCW 64.04.175, which reads: "Easements established by a dedication are property rights that cannot be extinguished or altered without the approval of the easement owner or owners . . .". At the time in question, Mrs. Harris, as the owner of lot 31, was also the owner of the right to use the platted roadway.

Nor are they aided by the rule that "[m]ere nonuse, for no matter how long a period, [does] not extinguish the easement". *Thompson v. Smith*, 59 Wn.2d 397, 407, 367 P.2d 798 (1962). *See also Edmonds v. Williams*, 54 Wn. App. 632, 774 P.2d 1241 (1989). In *Thompson*, the plaintiffs sought to enjoin the defendant's construction and maintenance of a concrete slab over a portion of property reserved for road purposes. The court held at pages 407-08 that the servient owner had the right to use the property for any purpose that did not interfere with enjoyment of the easement. Since the slab could be removed without substantial cost if and when the road was opened, the court at page 409 concluded there was no present reason to enjoin the defendant. Here, the residence is a more permanent structure than the concrete slab in *Thompson* and is combined with Mrs. Harris' construction of an alternate road around her house. These facts constitute more than "mere nonuse".

*Deskbook* § 15.46, at 15-25 (2d ed. 1986) (citing *Schumacher v. Brand*, 72 Wash. 543, 546-47, 130 P. 1145 (1913)). Mrs. Harris' activity also constituted a claim by adverse possession to the portion of the platted road right of way on which the improvements encroached. Since her claim continued for the statutory period, it ripened to title. As in *Curtis*, these facts are sufficient to support a finding the location of the easement shifted to the existing road.

The dissent does not take into account the foregoing history. It reads the Barnharts' sales contract and deed in a vacuum and concludes Gold Run conveyed an easement in the right of way as originally platted. We hold Gold Run conveyed an easement in the platted right of way *as it existed* in 1983.

### THE CROSS APPEAL

Gold Run contends the trial court erred in denying its request for attorney fees based on the fees provision in its real estate contract with the Barnharts. The real estate contract provides: "In the event of any lawsuit between the parties to this contract *to settle issues arising hereunder*, the prevailing party shall recover judgment against the other party for a reasonable attorney's fee." (Italics ours.) The Barnharts' amended complaint cites the language pertaining to the easement as found in the real estate contract and alleges, "Gold Run, Inc., has the responsibility to provide the Plaintiffs with the roadway easement as bargained for in the sale of the property . . .".

■ Generally, "[a] deed made in full execution of a contract of sale of land merges the provisions of the underlying contract . . .". *Kunkel v. Meridian Oil, Inc.*, 54 Wn. App. 675, 678, 775 P.2d 470 (1989) (citing *Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 248, 450 P.2d 470 (1969)), *rev'd on other grounds*, 114 Wn.2d 896, 792 P.2d 1254 (1990). An exception to the general rule exists for "stipulations in the contract which are not contained in, not performed by, and not inconsistent with the deed *and* which are held to be collateral to or independent of the obligation to convey.' "

*Kunkel*, at 679 (quoting *Snyder v. Roberts*, 45 Wn.2d 865, 872, 278 P.2d 348, 52 A.L.R.2d 631 (1955)).

Here, Gold Run seeks attorney fees in connection with the Barnharts' action to enforce the alleged agreement to convey an easement in the platted roadway. The basis of the Barnharts' action is central, not collateral, to the agreement to convey. Thus, Gold Run's contractual right to fees for such an action ended when the deed was issued in 1984. In *Espinoza v. Safeco Title Ins. Co.*, 598 P.2d 346, 348 (Utah 1979), the court so held when the plaintiffs relied upon an earnest money provision for fees in a suit they filed against the vendors for failure to convey clear title.

The deed merged the provisions of the real estate contract, including the provision for fees. There now being no contractual basis to award fees, the Superior Court did not err in denying Gold Run's request therefor. Nor is there any basis for awarding Gold Run fees on appeal.

Affirmed.

MUNSON, J., concurs.

SWEENEY, J. (dissenting) — The issue presented is whether the express written conveyance of an easement to Walter and Pauline Barnhart, *in 1984*, is affected by events prior to 1983. I do not believe that it is and, therefore, respectfully dissent.

### FACTS

In 1983 Gold Run, Inc., sold the Barnharts lot 31 and an "easement for roadway for ingress to and egress . . . over and across the platted roadway, appearing in the plat of Anderson's Summer Home Tracts . . .". The Barnharts now seek to enforce their right to this easement. They paid the contract balance in 1984 and Gold Run delivered a deed to lot 31. The deed expressly granted the easement referenced in the 1983 contract. Documents transferring title to Lillian Van Der Wel (lot 30 in 1988) and Gale and Barbara Karspeck (lot 29 in 1988), across which the platted roadway ran, also con-

veyed title *subject* to rights of way or easements shown on the plat.

## EASEMENT BY REFERENCE TO MAP

"Where a conveyance of land . . . refers to a map on which spaces for streets . . . are shown, . . . the conveyee . . . acquires an easement with respect to the street . . .". 3 R. Powell, *Real Property* ¶ 409, at 34-55 through 34-57 (1990). *See also* 1 Washington State Bar Ass'n, *Real Property Deskbook* § 15-27, at 15-17 (2d ed. 1986).

## STANDARD OF REVIEW

Because these issues involve questions of law, the standard of review is de novo. *Womble v. Local Union 73, Int'l Bhd. of Elec. Workers*, 64 Wn. App. 698, 700, 826 P.2d 224, *review denied*, 119 Wn.2d 1018 (1992).

## ADVERSE POSSESSION

The majority affirms the trial court, relying primarily on *Curtis v. Zuck*, 65 Wn. App. 377, 829 P.2d 187 (1992). *Curtis* was decided, essentially, on the basis of adverse possession. *Curtis*, at 383-84.

*Curtis* is not controlling authority here. Adverse possession is not a correct basis for Gold Run's claim. Marie Harris, Gold Run's predecessor in interest, was the owner of both the servient and dominant estates. If the same person becomes the owner of both the benefited and the burdened properties, the easement is terminated by merger. *Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 351 P.2d 520 (1960). The easement does not reappear upon severance of the estates after merger, *unless recreated by the grant of a new express easement. Real Property Deskbook* § 15.44, at 15-25. Thus, the doctrine of merger, rather than that of adverse possession, explains the extinguishment of the easement. Notwithstanding its prior extinguishment, this easement was recreated by Gold Run's 1984 deed to the Barnharts.

## ABANDONMENT

Mrs. Harris built her home and related improvements on the right of way. The majority concludes that Mrs. Harris

evidenced an intent to abandon the platted roadway when she constructed these improvements and built an alternative roadway, in 1949 and 1955. Majority, at 422. This is true and would be fatal to the Barnharts' claim were it not for the fact that their right to the easement stems from Gold Run's written grant, almost 30 years later (in 1984); Gold Run relinquished any claim of abandonment by its 1984 deed.

Furthermore, the new equitable remedy of the "shifting easement", majority at 420-21, is unnecessary and unwise. Unnecessary because there is adequate authority for the court to fashion equitable remedies, and unwise because it creates uncertainty in the transfer of real property. Further, the roadway here did not simply "shift", it is a new and different roadway.

### Authority To Fashion Equitable Remedy

The trial court used principles of law to fashion an equitable result. The court, however, has ample authority to consider hardship, balance equities and fashion a practical, equitable solution. *See Arnold v. Melani,* 75 Wn.2d 143, 152, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968). A court sitting in equity has always had the right to step in and prevent the enforcement of a legal right whenever enforcement would be inequitable. *Arnold,* at 152 (citing *Thisius v. Sealander,* 26 Wn.2d 810, 818, 175 P.2d 619 (1946)). The equitable relief sought (and denied) in *Arnold* was a mandatory injunction; the equitable relief sought here is specific performance. The *Arnold* court refused to order a mandatory injunction after evaluating a number of considerations. The considerations set out in *Arnold,* while not precisely applicable, are adequate guideposts for the trial court to balance the competing interests of the parties here:

> (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is imprac-

tical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

*Arnold*, at 152.

In sum, the trial court bases its decision on its conclusion that Gold Run acquired title to portions of the dedicated roadway by adverse possession. The majority, while not specifically discussing adverse possession, concludes that a platted road right of way can shift because of long usage, citing *Curtis v. Zuck, supra*. I disagree. I would, therefore, reverse and remand to afford the trial court the opportunity to take further testimony and to fashion an equitable remedy based on the competing interests of these parties.