145 P.3d 411 (2006)
M.K.K.I., INC., a corporation and Yakima County, a municipal corporation, Respondents,
v.
Dennis KRUEGER and Karen Krueger, husband and wife; Rickey Rose and Christine A. Rose, husband and wife; Wells Fargo Home Mortgage, Inc., Defendants, and
Vince D. Clark and Judy Clark, husband and wife; Pacific Alliance Title, LLC; and Sue and John Doe Stein, husband and wife, Appellants.
No. 23826-1-III.
Court of Appeals of Washington, Division 3.
October 24, 2006.
*413 Sarah Lynn Clarke Wixson, Velikanje Moore & Shore PS, Yakima, WA, Gary Howard Branfeld, Branfeld & Associates PS, University Place, WA, Garold Edwin Johnson, Mann Johnson Wooster & McLaughlin, Tacoma, WA, for Appellants.
Wade Elliot Gano, Thorner, Kennedy & Gano PS, Yakima, WA, for Defendants.
Jeffrey Robert Simpson, Terry Dee Austin, Yakima, WA, for Respondents.
KULIK, J.
¶ 1 RCW 58.17.060 requires local governments to adopt regulations and procedures for the approval, alteration, and vacation of short plats. In 1999, Ricky and Christine Rose recorded two plats showing easements, following the procedures contained in Yakima County Code (Y.C.C.) 14.12. Three years later, the Roses deeded one lot within the plats to MKKI, Inc. without reference to any easement. Shortly before the Roses deeded the lot to MKKI, Inc., they tried to vacate the easements by quit claiming the easements to themselves.
¶ 2 Because the easements in the short plat could be amended only by following the county code, we hold that the quit claim deeds were void and that the easements were conveyed to MKKI, Inc. We affirm the trial court's grant of summary judgment in favor of MKKI, Inc. and Yakima County.

PROCEDURAL FACTS
¶ 3 MKKI, Inc. (MKKI) and Yakima County (County) brought this action seeking a declaratory judgment nullifying the quit claim deeds and quieting title to the easements shown in the short plats. The trial court granted summary judgment in favor of MKKI and the County, concluding that the short plats could be amended only by following the applicable statutes and regulations. The court also concluded that the quit claim deeds were void and that the easements had been conveyed to MKKI. The Roses' successors in interest, Vince and Judy Clark, Pacific Alliance Title, and Sue and John Doe Stein appeal.

FACTS
Short Plats
¶ 4 On May 3, 1999, the Roses recorded with the Yakima County Auditor a three lot short plat under Auditor's File Number 77114450 (Short Plat 1). The three lots created by Short Plat 1 are designated as "Lot 1A," "Lot 2A," and "Lot 3A." The legal description *414 of the land subject to Short Plat 1 includes Parcel B and a portion of Parcel A lying north of the south line of parcel B extended westerly.
¶ 5 On May 5, 1999, the Roses recorded a two lot short plat with the Yakima County Auditor under File Number 7114975 (Short Plat 2). The two lots created by the short plat are designated as "Lot 1B" and "Lot 2B." Lot 1B was ultimately purchased by MKKI. The legal description of the land subject to this short plat is different than that in Short Plat 1. Short Plat 2 covers Parcel A, except for that portion lying north of the south line of parcel B extended westerly.
¶ 6 These lots are all contiguous and all appear on the maps filed for each short plat. The maps are referred to in the record as "Short Plat 1" and "Short Plat 2" but each map shows all the lots. Therefore, the terms "Short Plat 1" and "Short Plat 2" refer to both the actual subdivided plats and to the two different maps recorded with the county showing the entire property. The controversy centers on the statutory deed executed by the Roses in favor of MKKI for Lot 1B of Short Plat 2.
Easements on Short Plats
¶ 7 Short Plat 1 and Short Plat 2 show a 30-foot wide access easement running north and south along the west side of Lot 3A and ending at the property line of Lot 1B. Both short plats describe this easement as "access ease, utility ease, [and] well access ease." Clerk's Papers (CP) at 84, 87. In addition, Short Plat 2 describes this easement as "Benefit Lot 1B, 3A." CP at 87. MKKI purchased Lot 1B, and Vince and Judy Clark purchased Lot 3A.
¶ 8 Short Plat 1 and Short Plat 2 also show a 30-foot wide access easement running across the north side of Lot 2B from Maple Way Road on the east to the west boundary of Lot 2B. The marked area for the easement is designated as an "access ease." CP at 84-88. Lot 2B was later purchased by Dennis and Karen Krueger (Kruegers).
Roses' Quit Claim Deeds
¶ 9 On March 8, 2001, the Roses executed a quit claim deed to themselves in an attempt to extinguish the 30-foot easement on the west side of Lot 3A in Short Plat 1. The quit claim deed did not mention the dominant parcel, Lot 1B.
¶ 10 On November 8, 2001, the Roses executed a second quit claim deed to themselves. This quit claim deed was an attempt to extinguish the 30-foot easement across the north 30 feet of Lot 2B on Short Plat 2. The quit claim deed did not mention the dominant parcel, Lot 1B.
¶ 11 At no time did the Roses apply to Yakima County to amend Short Plat 1 or Short Plat 2.
Sale of Lots 3A, 2B, and 1B
¶ 12 The same day that the first quit claim deed was executed, the Clarks purchased Lot 3A from the Roses. The deed from the Roses to the Clarks describes the property as being on Short Plat 7114450 (Short Plat 1). The deed states that the land was sold "subject to . . . easement shown on the plate [sic]." CP at 111. Likewise, the deed states that the land was sold "subject to easements for access . . . as disclosed upon the face of [the] short plat." CP at 112. Significantly, Short Plat 1 shows a 30-foot easement across the west end of Lot 3A.
¶ 13 About the time the second quit claim deed was executed in November, the Roses sold Lot 2B to the Kruegers. The deed described the property as "Lot 2B of Short Plat recorded under Yakima County Auditor's File Number 7114975." CP at 308. The deed states that the land was sold "subject to . . . easements shown on the plate [sic]." CP at 308. The deed also states that the property is "subject to easement delineated on the face of the plat of Short Plat No. 7114975." CP at 309. The deed further states that the easement is for "access" and affects a 30-foot strip along the north side of Lot 2B. CP at 309. Significantly, this plat, Short Plat 2, shows a 30-foot easement along the north side of Lot 2B, and another 30-foot easement on the west end of Lot 3A.
*415 ¶ 14 The Roses sold Lot 1B to MKKI in August 2002. The statutory deed from the Roses to MKKI described the property as "Lot 1B of Short Plat recorded under Yakima County Auditor's File No. 7114975." CP at 167-169. This deed did not include or exclude any easements owned by the Roses.
Complaint
¶ 15 MKKI and Yakima County filed a complaint for declaratory judgment nullifying the quit claim deeds and quieting title to the access easements. Additionally, MKKI sought recovery for breach of warranty and misrepresentation. These latter two issues were reserved pending the decision on the easements.
¶ 16 MKKI and the County filed separate motions for summary judgment. MKKI and the County argued that the quit claim deeds were void and of no effect. The trial court granted summary judgment in favor of MKKI and the County. The Clarks, Pacific Alliance Title, and the Steins[1] appeal.

ANALYSIS
¶ 17 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court. Id. Facts and reasonable inferences from the facts are considered in the light most favorable to the nonmoving party. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999). Conclusions of law are reviewed de novo. Id.

A. EASEMENTS
¶ 18 The Clarks contend that Short Plat 1 does not contain a dedication of an easement. They assert that an owner's intent will not be presumed and that MKKI must prove that the owner's intent is unmistakable.
RCW 58.17
¶ 19 A party may create private easements by including the donation or grant in a plat or short plat. RCW 58.17.165 provides, in part, that:
Roads not dedicated to the public must be clearly marked on the face of the plat. Any dedication, donation or grant as shown on the face of the plat shall be considered to all intents and purposes, as a quit claim deed to the said donee or donees, grantee or grantees for his, her or their use for the purpose intended by the donors or grantors as aforesaid.
(Emphasis added.)
¶ 20 Under RCW 58.17.060, local governments are required to "adopt regulations and procedures, and appoint administrative personnel for the summary approval of short plats and short subdivisions or alteration or vacation thereof." (Emphasis added.) The County's short plat regulations are contained in Chapter 14.12 of the Y.C.C. The procedures for amending a short plat are set forth in Y.C.C. 14.12.080. In most circumstances, after a short plat is finalized, the short plat cannot be amended except by following the procedures set forth in the Y.C.C. Under Y.C.C. 14.12.080(1), an amended plat must comply with the procedures for originally obtaining short plat approval.
¶ 21 When Short Plat 1 and Short Plat 2 were created, the Roses followed the short plat procedure specified in Y.C.C. Section 14.12.040. Both plat maps show the appropriate dedication language and state that they "hereby grant and reserve the easements as shown hereon for uses indicated." CP at 85, 88. The two short plats were recorded with the Yakima County Auditor. Once Short Plat 1 and Short Plat 2 were filed, no subsequent amendments were made pursuant to the Y.C.C.
Easements Granted
¶ 22 The intent of the plat applicant determines whether a plat grants an easement. Selby v. Knudson, 77 Wash.App. 189, 194, 890 P.2d 514 (1995). If possible, the intent of the applicant is ascertained from *416 the plat itself. Id. When a plat is ambiguous, the applicant's intention may be determined by considering the surrounding circumstances. Id. When the terms of a written instrument are uncertain or capable of being understood as having more than one meaning, the instrument is ambiguous. Id. at 194-95, 890 P.2d 514.
¶ 23 An easement is a property right separate from ownership that allows the use of another's land without compensation. Olympia v. Palzer, 107 Wash.2d 225, 229, 728 P.2d 135 (1986). A grantor must intend to convey an easement. See Seattle v. Nazarenus, 60 Wash.2d 657, 665, 374 P.2d 1014 (1962). No particular words are required to constitute a grant, instead, any words which clearly show an intention to give an easement are sufficient. Beebe v. Swerda, 58 Wash.App. 375, 379, 793 P.2d 442 (1990).
¶ 24 Easements are classified as "in gross" or "appurtenant." An easement in gross directly benefits one person, and easement appurtenant benefits a particular piece of property. Olson v. Trippel, 77 Wash.App. 545, 554, 893 P.2d 634 (1995). As such, an easement appurtenant necessarily requires a dominant estate which benefits from the easement and a servient estate which is burdened by the easement. Roggow v. Hagerty, 27 Wash.App. 908, 911, 621 P.2d 195 (1980). There is a strong presumption that easements are appurtenant. Green v. Lupo, 32 Wash.App. 318, 323, 647 P.2d 51 (1982).
¶ 25 An easement is more likely appurtenant when the easement is conveyed to "owners of lots 1, 2, and 3" rather than the names of the individuals. Kemery v. Mylroie, 8 Wash.App. 344, 346-47, 506 P.2d 319 (1973). An easement extending to the end of a servient property is consistent with an intent to serve the adjacent property. Kirk v. Tomulty, 66 Wash.App. 231, 240, 831 P.2d 792 (1992). Significantly, an appurtenant easement passes to the successor in interest of the dominant estate even if the easement is not mentioned in the instrument of transfer. Id. at 239, 831 P.2d 792.
¶ 26 The Clarks contend that Short Plat 1 does not contain a dedication of the disputed easement to MKKI. The Clarks point out that Short Plat 1 does not dedicate the 30-foot easement to a specific person or to the public for a specific purpose. But Short Plat 1 does provide information as to the use of the easement. Specifically, the area marked for the easement on the plat map contains the description: "access ease, utility ease, well access ease." CP at 84.
¶ 27 The Clarks rely on Hanford v. Seattle, 92 Wash. 257, 158 P. 987 (1916), to support their argument that the term "access easement" was insufficient to create a dedication on behalf of MKKI. The Clarks maintain that Hanford concluded that the notation "East Park" on a plat was insufficient to create a public dedication because there were no affirmative words indicating the plattor's intent to make a dedication to the public or an individual. Id. at 260, 158 P. 987. Having reserved this particular block, the plattors transferred this land, and the land was transferred again. Id. at 260-61, 158 P. 987. The court concluded that the dedication may have been a revocable donation prior to acceptance and revocation may have resulted from the transfer of the land. Id at 261, 158 P. 987. The court in Hanford relied on facts in addition to the "East Park" notation.
¶ 28 Here, the description on Short Plat 1 reads "access ease," and the other description reads "access ease, utility ease, [and] well access ease." CP at 84. This language is sufficient to establish two easements across the Clark and Krueger property for the benefit of the MKKI property.

B. DESCRIPTION OF EASEMENTS IN PLATS
¶ 29 Short Plat 1 and Short Plat 2 divide different parcels of land. Also, the easement descriptions are different. Short Plat 1 describes Lots 1A, 2A, and 3A. Lots 1B and 2B are visible but not included in the legal description. Short Plat 1 shows a 30-foot easement across Lot 3A for "access ease, utility ease, [and] well access ease." CP at 84. Short Plat 2 describes Lots 1B and 2B. MKKI bought Lot 1B of Parcel A under Short Plat 2. While Short Plat 2 divided described Lots 1B and 2B, Short Plat 2 also added language to the easement on Lot 3A. *417 Specifically, Short Plat 2 added the description "benefit lot 1B, 3A." CP at 87.
¶ 30 Viewed in the context of this case, the additional language in Short Plat 2 is an attempt to amend the easement in Short Plat 1. However, this amendment to Short Plat 1 was not made pursuant to the Y.C.C. As a result, the easements must be viewed as they are described in Short Plat 1.
¶ 31 The Clarks point out that there are other variations between the short plats. For example, they assert that there are variations in the boundary lines and a change in the point of access to the Clarks' property. Also, the Clarks maintain that Short Plat 1 limits their access and the access of Lot 2A to the shared roadway/access approach. According to the Clarks, these variations raise a question of fact that is material to this dispute.
¶ 32 But this issue can be resolved based on the record provided. While there are some variations in the short plats, the issue as to whether Short Plat 1 describes the two easements can be determined based on plat maps. The easements exist as shown in Short Plat 1: a 30-foot easement for "access ease, utility ease, [and] well access ease." CP at 84.

C. ATTEMPTS TO EXTINGUISH THE EASEMENTS AND EFFECT OF DEEDS
¶ 33 Pacific Alliance and the Clarks offer several arguments to support their contentions that the easements were extinguished and thus not conveyed to MKKI.
¶ 34 Short Plats 1 and 2 were created consistent with Y.C.C. 14.12.040. Under this provision, the application for final approval of a short plat must contain, among other things, the location of private easements and a dedication containing the acknowledged signatures of all parties having an ownership interest in the land stating that they "do hereby grant and reserve the easements as shown hereon for the uses indicated." Y.C.C. 14.12.040. In order to amend a short plat, the amended short plat must comply with all of the procedures and requirements for the original short plat approval. Y.C.C. 14.12.080.
¶ 35 Short Plat 1 and Short Plat 2 contain the dedication language, but there is no subsequent plat following the amendment procedure required by the Y.C.C. Nevertheless, the Clarks and Pacific Alliance contend an easement may be extinguished without following the Y.C.C. amendment procedure.
¶ 36 Pacific Alliance asserts Barnhart v. Gold Run, Inc., 68 Wash.App. 417, 843 P.2d 545 (1993), establishes that the statutory requirements would be met, and the easement extinguished, where the original owner held title when the extinguishment occurred. However, Barnhart is distinguishable from the case here because Barnhart was decided on the basis of adverse possession. Id. at 422-23, 843 P.2d 545. This is not an adverse possession case.
¶ 37 Van Buren v. Trumbull, 92 Wash. 691, 159 P. 891 (1916), supports the trial court's conclusion that the easements in this case were not extinguished. In Van Buren, the street had been vacated and the court was considering the enforcement of a private easement. The appellants in Van Buren argued that the respondents could not have relied upon the plat where they had knowledge that the easements had been extinguished. Similarly, the Clarks and Pacific Title claim that MKKI knew the easements had been extinguished and could therefore not benefit from them. However, this argument was rejected in Van Buren which held that once the property had been platted, the owners, or their successors, could not defeat the rights of a person who purchased property by reference to the recorded plat. Id. at 693, 159 P. 891.
¶ 38 Pacific Alliance maintains that Curtis v. Zuck, 65 Wash.App. 377, 829 P.2d 187 (1992), determined that the rule established in Van Buren was not controlling. But Curtis did not involve the extinguishment of an easement. Instead, the parties in Curtis were attempting to move an easement. Id. at 382, 829 P.2d 187. The trial court correctly decided that Curtis was factually distinguishable from Van Buren, and therefore not controlling.
*418 ¶ 39 McPhaden v. Scott, 95 Wash.App. 431, 975 P.2d 1033 (1999), also supports MKKI's position that an easement depicted on a short plat may not be extinguished without a formal amendment to the short plat. In McPhaden, the original plat map did not show an easement. One year later, a surveyor recorded a separate document in an attempt to amend the plat map. The court determined that the filing of this document did not comply with statutory requirements and did not create an easement or amend the original plat map.
¶ 40 Pacific Alliance argues that the easements here were extinguished because the Roses and MKKI never agreed that the easements were to be conveyed to MKKI. Accordingly, Pacific Alliance asserts that MKKI did not contract for the easements, and that a party should be held to his or her contract. See Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 826, 881 P.2d 986 (1994).
¶ 41 This argument demonstrates the fundamental misunderstanding driving this appeal. With limited and specific exceptions, once a private easement is depicted on a short plat, the easement cannot be extinguished without amending the plat document. Consequently, the easements here were not extinguished and were conveyed to MKKI as part of the property.
¶ 42 Pacific Alliance also contends that MKKI's understanding of RCW 58.17.060 is mistaken given that other statutes allow easements shown on plats to be extinguished by adverse possession, boundary adjustments, and private condemnations. See, e.g., RCW 7.28.070, and 8.24.010. But existence of these statutes does not negate the operation of RCW 58.17.060 and the Y.C.C. in appropriate circumstances. Under the undisputed facts here, RCW 58.17.060 and Y.C.C. 14.12.080 applied to require the amendment of the original plat to vacate the easements.
¶ 43 The Clarks contend the easements were extinguished in two ways. First, they maintain that the easements were extinguished by the application of the doctrine of merger. See Schlager v. Bellport, 118 Wash. App. 536, 76 P.3d 778 (2003); Radovich v. Nuzhat, 104 Wash.App. 800, 16 P.3d 687 (2001). Second, the Clarks contend that the deed to MKKI did not convey the easements to MKKI.
¶ 44 As Radovich explained, when the dominant and servient estates of an easement are commonly owned, the easement is extinguished because a person cannot have an easement in his or her own property. However, there are exceptions to the doctrine of merger and merger is disfavored both in law and in equity. Radovich, 104 Wash.App. at 805, 16 P.3d 687. Here, the easements were created in short plats and are governed by statute and the procedure set forth in Y.C.C. 14.12.040. Because the Roses did not follow this procedure when they attempted to extinguish the easements, the easements still existed when the Roses conveyed the property to MKKI.
¶ 45 The Clarks point out that MKKI reviewed the plats and signed the disclosure form stating that there were no easements. However, because the Roses failed to amend the short plat, they had the easements when they conveyed the property to MKKI regardless of the inaccuracy of the disclosure form.
¶ 46 Finally, Pacific Alliance argues that Bunnell v. Blair, 132 Wash.App. 149, 130 P.3d 423 (2006), supports the proposition that the easements here are private and that the County has no interest in requiring the amendment of the short plat to extinguish the easements.
¶ 47 In Bunnell, the Blairs contended that several access roads within various short plats were not private because the plat maps were not labeled "`Private Road Easement,'" as required by the Benton County Code, adopted pursuant to RCW 58.17.060. Bunnell, 132 Wash.App. at 152, 130 P.3d 423. The court examined the labeling and determined that reasonable minds could conclude that the county regulation had been satisfied. Id. at 153. Bunnell supports the argument that this court should apply the county code as was done in Bunnell. Bunnell does not stand for the proposition that the County has no right or interest in requiring compliance with the Y.C.C. to extinguish easements.

*419 D. BONA FIDE PURCHASER FOR VALUE
¶ 48 The Clarks and Pacific Alliance contend that MKKI is not a bona fide purchaser and is not entitled to the protections extended to a bona fide purchaser.
¶ 49 "A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration." Glaser v. Holdorf, 56 Wash.2d 204, 209, 352 P.2d 212 (1960). Where a purchaser has notice of facts sufficient to put an ordinarily prudent person on inquiry, the purchaser is on notice of all defects in title or equitable rights of others that the inquiry would have uncovered. Miebach v. Colasurdo, 102 Wash.2d 170, 175-76, 685 P.2d 1074 (1984).
¶ 50 The question of whether or not MKKI is a bona fide purchaser is not relevant here, nor is it a material fact preventing summary judgment.

E. COUNTY'S INTEREST
¶ 51 Lastly, Pacific Alliance contends there is no basis for allowing the County to participate in this action. Pacific Alliance argues that the easements at issue here were for private use and that RCW 58.17.215 did not apply.
¶ 52 The County is a plaintiff in this action. The trial court granted summary judgment in favor of MKKI and Yakima County on the claim seeking a declaratory judgment to nullify the quit claim deeds and quiet title to the access easements.
¶ 53 RCW 58.17.010 provides that "the process by which land is divided is a matter of state concern and should be administered . . . by cities, towns, and counties throughout the state." The purpose of the statute is to "regulate the subdivision of land and to promote the public health, safety and general welfare." RCW 58.17.010. The county regulations have the same purpose. Y.C.C. 14.04.040. Pacific Alliance's assertions that the statute should not apply to the extinguishment of private easements is contrary to the plain terms of the subdivision statute. The county's position, that access easements established through the platting process must be extinguished through the plat amendment process, is consistent with the statute and with the Y.C.C.
¶ 54 We affirm the trial court's grant of summary judgment in favor of MKKI and Yakima County.
WE CONCUR: SCHULTHEIS, A.C.J., and BROWN, J.
NOTES
[1] Pacific Alliance Title and the Steins are referred to collectively as "Pacific Alliance."