[No. 1213-2.    Division Two.    April 10, 1975.]

RICHARD RYDMAN *et al, Appellants*, v. MARTINOLICH SHIP-BUILDING CORPORATION *et al, Respondents.*

*Moriarty, Long, Mikkelborg & Broz, Douglas M. Fryer, White, Sutherland, Parks & Heath, Nathan J. Heath,* and *Alex Parks,* for appellants.

*Detels, Draper & Marinkovich* and *Martin P. Detels, Jr.,* for respondents.

PEARSON, J.—This is an appeal from a summary judgment dismissing appellant Rydman's cause of action against a builder's risk insurer. The primary issue presented is whether the insurer was liable under its policy for the loss of Rydman's vessel.

On September 15, 1970, Martinolich Shipbuilding Corporation (Martinolich) contracted to build a fishing vessel for Richard Rydman, a commercial fisherman, for $180,000. The contract provided that Martinolich would "at all times during the construction of this vessel and up to the time of delivery thereof, maintain standard marine builder's risk insurance in the amount of $180,000, . . ." with both Martinolich and Rydman as assureds. Accordingly, Martinolich purchased such a policy, covering a period from October 12, 1970, to February 12, 1971 (later extended to March 12, 1971), or until delivery, if delivered at an earlier date. The policy provided in relevant part:

This Policy insures against all risk of physical loss of or damage to the subject matter hereby insured, except as hereinafter provided.

In the event that faulty design of any part or parts should cause loss of or damage to the subject matter insured, this insurance shall not cover the cost or expense of repairing, replacing or renewing such part or parts, nor any expenditure incurred by reason of betterment or alteration in design.

. . .

This Policy insures only, during the period aforesaid, while the subject matter hereby insured is at (ashore or afloat) the building location hereinbefore named; while in transit within the port of construction to and from such location; while on trial trips (including proceeding to and

returning from the trial course) loaded or otherwise, as often as required, within a distance by water of 100 nautical miles of the port of construction or held covered as hereinafter provided.

The vessel was delivered to Rydman on January 22, 1971. It subsequently sank, allegedly due to defects in design and construction. It is conceded that the accident occurred more than 100 nautical miles from the location of construction and after delivery to Rydman. At the time of the accident, Rydman had a policy of hull and machinery insurance on the vessel in the amount of $180,000.[1] The hull insurers paid him $180,000 and were thereby subrogated to his rights.

Rydman and the hull insurers brought an action against Martinolich and the builder's risk insurers. Against Martinolich they sought recovery of the value of the vessel and equipment on the date it sank, and lost profits. The sixth cause of action sought from the builder's risk insurers recovery of the policy amount, $180,000. Upon motion for summary judgment, the trial court dismissed the cause of action against the builder's risk insurers, pursuant to CR 54. A notice of appeal in Rydman's name was filed. On appeal, respondents contend that Rydman was not a real party in interest or aggrieved party and therefore the appeal should be dismissed. In response and prior to oral argument, a motion was made to amend the notice of appeal to include the hull and machinery insurers.

We grant the motion to amend the notice of appeal. The record indicates that the names of the hull and machinery insurers were inadvertently omitted from the notice; at the time of filing the notice local counsel was not aware of cocounsel's filing of a second amended complaint, naming the insurers—whose names were included in the titles of all briefs. Pursuant to Court of Appeals Rules on Appeal and the Superior Court Civil Rules, we will disregard the

---

[1] The policy in effect at the time of the loss was underwritten by the other plaintiffs, Home Insurance Company and Insurance Company of North America.

technical inaccuracy, grant the motion to amend, and decide the case on the merits. *See* CR 17(a); CR 21; CR 60; CAROA 63.

Rydman contends that the builder's risk policy covers the loss of his vessel. He argues that the policy insures not only losses occurring during the policy period, but also losses occurring after the policy period when the operative cause of the loss, here allegedly defective construction, occurred during the policy period.

■ In resolving the issue whether this policy covers only losses occurring during the policy period, we turn to the rules of contract construction. Where the language of a contract is unambiguous, the intent of the parties and meaning of the contract are to be determined from the language alone, without resort to other aids of construction. *Hastings v. Continental Food Sales, Inc.*, 60 Wn.2d 820, 376 P.2d 436 (1962); *Boeing Airplane Co. v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954). "A written instrument is ambiguous when its terms are uncertain or capable of being understood as having more than one meaning." *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 989, 472 P.2d 611 (1970); *accord, Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 411 P.2d 868 (1966).

■ In our view, the terms of the builder's risk policy are not ambiguous. It was clearly stated that "[t]his Policy insures only" during the policy period and within a certain geographical area. The key word is "insures." It could not be stated more clearly that the builder's risk insurers' liability terminated outside the time and location limitations.

■ This construction of an unambiguous insuring agreement is totally consistent with the purpose for which the insurance was purchased. The contract between Rydman and Martinolich provided that Martinolich would maintain insurance *until delivery*. This insurance was to be "standard builder's risk insurance." The form on which the policy is written indicates that standard builder's risk insurance was obtained—it is entitled "American Institute

Builder's Risk Form." As a leading authority on marine insurance has stated: a builder's risk policy "is not intended to cover damage which does not arise out of and during the normal course of construction; thus, if negligence of builders results in damage after delivery, it falls on the policies then in effect (subject, of course, to those policies' conditions)." L. Buglass, *Marine Insurance and General Average in the United States*, 285 (1973).

Plaintiffs rely primarily upon *Stanley v. Onetta Boat Works, Inc.*, 303 F. Supp. 99 (D. Ore. 1969), *aff'd*, 431 F. 2d 241 (9th Cir. 1970), a case involving several claims stemming from damage to a fishing vessel. The builder's risk insurer was held liable for loss of profits on two grounds— under its policy, and for negligent repair before delivery. In regard to the former, the *Stanley* court stated that it was of no consequence that the claim of loss or ascertainment of damages occurred after expiration of the policy. We believe, however, that this case is not pertinent to the case at bar. In *Stanley* the claim against the builder's risk insurer was for lost profits, and the main issue was whether the policy exclusion of consequential damages precluded such recovery. The value of the vessel was recovered from those insuring the hull at the time of the accidents, and they asserted no subrogation rights against the builder's risk insurers. Moreover, the builder's risk policy involved in *Stanley* was not set forth in the court's opinion and is not part of the record in this court. Whether the loss or merely the claim of loss occurred after the policy period and outside the geographical limitations is not known. If in fact the case stands for the proposition that a builder's risk insurance policy covers some losses occurring after the policy period, we decline to follow it and rely on the sounder principles of contract construction discussed above.

The judgment is affirmed.

PETRIE, A.C.J., and RUMMEL, J. Pro Tem., concur.