[No. 13175-1-III.   Division Three.   March 7, 1995.]

WILLIAM SELBY, ET AL, *Respondents*, v. MILTON O. KNUDSON, ET AL, *Defendants*, CHARLES F. ZISKA, ET AL, *Appellants*.

190

*John W. Lohrmann* and *Lohrmann Law Offices,* for appellants.

*Michael S. Mitchell,* for respondents.

THOMPSON, C.J. — William and Darlene Selby brought this action to quiet title to a 15.15-foot strip of land located at the eastern terminus of Crown Street in Walla Walla. The Selbys own the lot which abuts the strip on the north. Charles and Jane Doe Ziska own the lot which abuts the strip on the east. The court held the Selbys had acquired title to the strip by adverse possession. It rejected the Ziskas' claim that the intent of the persons who subdivided this area in 1906 was that the street extend to the western boundary of what is now the Ziskas' property. The Ziskas appeal, assigning error to (1) the court's finding the 1906 plat was unambiguous and supported its conclusion the subdividers retained record title to the strip, and (2) the court's conclusion that the Selbys' use of the strip satisfied all the elements of adverse possession. We affirm.

In 1901, Kate and Edward Nixon recorded the plat of Garden City Heights Addition in Walla Walla. The plat showed 13 lots north of Chester Street. In 1906, the Nixons subdivided the addition. The plat stated it included all of lots 1 through 11 of the original 13 lots shown in the 1901 plat. It also dedicated land for public use as roadways. One such roadway was Crown Street, which was depicted as deadending on the east at lot 12.

The 1906 plat contained a surveyor's error. Instead of including all of lot 11 in the subdivision, it, in fact, encompassed only part of it. The result was a 15.15-foot wide strip of property running between the eastern boundary of the subdivision and the western boundary of lot 12. On October 23, 1946, the Nixons quitclaimed the portion of the strip north of Crown Street to Thomas Rownes, Mr. Selby's grandfather and the Selbys' predecessor in interest. The deed to Mr. Rownes stated it was "made to correct a discrepancy arising out of an error in the plotting of said subdivision". The Nixons had sometime earlier quitclaimed the strip south of Crown Street to the owner of the subdivision lot which abutted it. The record title shows the portion of the strip at the eastern end of Crown Street as residing in the Nixons.

Exhibit 3 was admitted for illustrative purposes. It depicts the subdivision, showing boundaries created by the 1906 plat, the portion of lot 11 which the Nixons deeded to the Selbys' predecessor in interest in 1946, and the location of the disputed strip.

On June 2, 1992, the Selbys brought this action against the Ziskas, the City of Walla Walla, the Nixons, and others.[1] They claimed that the Nixons were the holders of the entire tract of land platted in 1906 and that due to a defect in title, the strip at the end of Crown Street had been left out of the subsequent chain of title. The Selbys claimed ownership of the strip by adverse possession. The Ziskas countered that the intent of the dedicators was that Crown Street extend to the eastern boundary of lot 11, so as to provide access therefrom to the Ziskas' property.

The matter proceeded to a bench trial on January 26, 1993. The testimony presented outlined the chain of title

---

[1]An order of default against the Nixons and others was entered on September 8, 1992. A stipulated order of default against the City of Walla Walla was entered on October 13, 1992.

and the effect of the surveyor's error, as set forth above. The Selbys also presented evidence to support their claim of adverse possession of the strip in question, as follows:

Dorothy Selby, the mother of Plaintiff William Selby, testified that she and Dale Selby (now deceased) came to Walla Walla in 1946. The family lived on the Crown Street property from 1946 to 1983. She stated that her father (Tom Rownes) initially kept beehives on the strip of property. He moved them off so that a full-size Red Cross tent could be put up to house the Selbys and their six children. Neither the Ziskas who lived across the fence (on lot 12) nor any other landowner ever told Mr. Rownes to take down the tent. She stated that while she lived at the Crown address from the late 1940's to 1983, she and her husband made use of the strip of land for parking their car, gathering and burning wood, as a play area for their children, and planting flowers. Nobody ever came onto the strip; the Selbys maintained it and cut the grass. She stated that the Ziskas did not use the strip at any time while she lived on Crown Street.

According to Mrs. Selby, the City of Walla Walla used the strip only once, when it was doing some blacktop work. They dumped some pieces of blacktop on the area. Mr. Selby told them to move it because the strip belonged to him. She stated that when she and her husband purchased the property from her father in 1956, she assumed it included the strip because "it's always been — We've always used it. It's always been part of it, so we just took it for granted that's what it was." Her testimony was corroborated by relatives and neighbors.

The trial court found:

### XIII

A review of the 1906 plat clearly shows Crown Street (as drawn), the subdivided Blocks 1-11, and an alley adjacent to Crown Street. *The plat is not ambiguous.* However, there was a survey measuring error that resulted in the lines and measurements on the 1906 plat not being consistent with the 1901 plat.

### XIV

. . . [S]ubsequent to the subdivision plat filing, . . . all portions of the entire parcel created by the survey error North and

South of the "strip" were conveyed to the adjacent property owners, including the Plaintiffs. No action was taken by the Defendants Nixon or their heirs to Quit Claim Deed the "strip" to the City as a continuation of the Crown Street right of way.

(Italics ours.) The court also found the Nixons were still the legal record owners of the strip, and that the Selbys' "claim to the 'strip' in their own right, as well as their family predecessors and title, has been open and notorious, made in good faith under a claim of right and adverse to all others, for at least 10 years and many years prior to that." On March 8, 1993, the court entered an order quieting title to the strip in the Selbys. This appeal followed.

The Ziskas contend the trial court erred in holding the 1906 plat was unambiguous and did not dedicate the 15.15-foot strip as a right of way.

██ ██ It is well settled law that the intention of the dedicator controls in construing a plat. *Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 269, 273, 714 P.2d 1170 (1986); *Frye v. King Cy.*, 151 Wash. 179, 182, 275 P. 547, 62 A.L.R. 476 (1929). The intention of the dedicator is to be "adduced from the plat itself, where possible, as that furnishes the best evidence thereof". *Frye*, at 182; *Rainier Ave. Corp. v. Seattle*, 80 Wn.2d 362, 366, 494 P.2d 996, *cert. denied*, 409 U.S. 983 (1972). As the court stated in *Frye*:

> "The first essential of a dedication is the intention of the owner of the land to dedicate it, and such intention is usually shown by the plat. The contrary intention cannot be shown by something hidden in the mind of the land owner."

*Frye*, at 182 (quoting *Hanson v. Proffer*, 23 Idaho 705, 132 P. 573 (1913)); *Cummins v. King Cy.*, 72 Wn.2d 624, 627, 434 P.2d 588 (1967).

██ If the plat is unambiguous, the intent, as expressed in such plat, cannot be contradicted by parol evidence. *Olson Land Co. v. Seattle*, 76 Wash. 142, 145, 136 P. 118 (1913). When a plat is ambiguous, "surrounding circumstances may be considered to determine [the dedicator's] intention". *Roeder*, at 273; *Deaver v. Walla Walla Cy.*, 30 Wn. App. 97, 633 P.2d 90 (1981). " ' "A written instrument is ambiguous

when its terms are uncertain or capable of being understood as having more than one meaning." ' " *Brust v. McDonald's Corp.*, 34 Wn. App. 199, 207, 660 P.2d 320 (1983) (quoting *Rydman v. Martinolich Shipbuilding Corp.*, 13 Wn. App. 150, 153, 534 P.2d 62 (1975) (quoting *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 989, 472 P.2d 611 (1970))).

The Ziskas *do not contend* that the plat is ambiguous. To the contrary, they argue that it *unambiguously* shows that the right of way runs clear to the eastern edge of the subdivision, that is, to their property (lot 12). They assert this court should consider the subsequent deeds the Nixons executed to correct the surveyor error as support for their position that it was not the Nixons' intention to create a plug at the end of Crown Street. This argument is without merit because if the plat is unambiguous, the intent of the subdividers as expressed in the plat cannot be contradicted by parol evidence, including a later deed. *Olson Land.* Further, the subsequent correction deeds for the northern and southern portions of the strip do not necessarily mean the Nixons believed the City owned the disputed strip.

The 1906 subdivision plat is not ambiguous. The plat map indicates the legal description and measurements of each lot. Lines used in the plat drawing indicate the subdivision boundaries. Although an error occurred in the survey measurements, the plat is not capable of two meanings. Consequently, there is substantial evidence to support the trial court's finding the strip was still owned by the Nixons and was not dedicated to the City of Walla Walla for the public use. It follows that the Ziskas' argument, which is based upon law to the effect a dedicated street cannot be divested from the public use by an abutting property owner's claim of adverse possession, also fails. *See Nelson v. Pacific Cy.*, 36 Wn. App. 17, 671 P.2d 785 (1983), *review denied*, 100 Wn.2d 1037 (1984).

Alternatively, the Ziskas argue the evidence does not support the court's finding the Selbys adversely possessed the

strip, even if the Nixons and not the City are the record owners.[2]

To establish a claim of adverse possession, a party must show his possession of the claimed property was: "(1) exclusive, (2) actual and uninterrupted, (3) open and notorious and (4) hostile and under a claim of right made in good faith". *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). The elements must concurrently exist for 10 years. RCW 4.16.020.[3] The trial court's findings on the elements of adverse possession are mixed questions of law and fact. *Petersen v. Port of Seattle*, 94 Wn.2d 479, 485, 618 P.2d 67 (1980). "Whether the essential facts exist is for the trier of fact; but whether the facts, as found, constitute adverse possession is for the courts to determine as a matter of law." *Chaplin*, at 863.

Here, the trial court found:

> Plaintiffs['] claim to the "strip" in their own right, as well as their family predecessors and title, has been open and notorious, made in good faith under a claim of right and adverse to all others, for at least 10 years and many years prior to that.

We hold this finding is supported by substantial evidence. In turn, it supports the conclusion the Selbys gained title to the strip by adverse possession. A review of the record indicates that the Selby family was in actual possession; they used the property in a manner commensurate with its particular attributes. *Double L Properties, Inc. v. Crandall*, 51 Wn. App. 149, 158, 751 P.2d 1208 (1988). Their use of the property for a tent, playground area, storage of cars, wood, and bees appears to be consistent with the nature, character and locality of the property. *Double L Properties*, at 158. Likewise, their possession was open,

---

[2]The concurring opinion agrees the Selbys' possession was adverse, but against the City instead of the Nixons. We note that the City was originally a party defendant to the Selbys' quiet title action, but "determined that it [had] no interest in . . . the real property . . .". It therefore stipulated to an order of default.

[3]If the person in possession is paying taxes on the property the length of time to establish the elements is 7 years. RCW 7.28.070. Here, the record does not indicate whether the Selby family paid taxes on the 15.15-foot strip.

notorious and visible. The title owner of the property had notice of the adverse use throughout the statutory period. *Chaplin*, at 862.

The Selbys' possession of the strip was also hostile. Hostile possession is defined as possession "that is opposed and antagonistic to all other claims, and which conveys the clear message that the possessor intends to possess the land as his own". 7 Richard R. Powell & Patrick J. Rohan, *Real Property* § 1013[2][c], at 91-23 (1991). Hostile possession " ' "does not import enmity or ill-will, but rather imports that the claimant is in possession as owner, in contradistinction to holding in recognition of or subordination to the true owner." ' " *Wells v. Miller*, 42 Wn. App. 94, 98, 708 P.2d 1223 (1985) (quoting *Chaplin*, at 857-58). The Selbys' use of the strip conveyed "the clear message" they possessed the land as their own.

Further, the Selbys' possession was exclusive and continuous. The Selbys held the property for themselves and not for another. 7 Powell & Rohan § 1013[2][d], at 91-26. Because there is privity between the successive occupants of the land, successive periods of occupation were properly tacked to compute the required 10-year period. *Roy v. Cunningham*, 46 Wn. App. 409, 413, 731 P.2d 526 (1986), *review denied*, 108 Wn.2d 1018 (1987).

The Ziskas take exception to the "color of title" element. Color of title has been defined as

> that which is a semblance or appearance of title, but is not title in fact nor in law. A claim to property under the terms of some conveyance, however incompetent to carry or pass the title, is strictly color of title.

*Scramlin v. Warner*, 69 Wn.2d 6, 9, 416 P.2d 699 (1966) (quoting *Bassett v. Spokane*, 98 Wash. 654, 656, 168 P. 478 (1917)). As set forth in 7 Powell & Rohan § 1013[2][i], at 91-44, "an adverse claim, otherwise valid, is not defeated by an initial mistake as to where the claimant's property ends and the neighbor's property begins." The court in *Chaplin*, at 860-61, stated the claim of right element requires only that "the claimant treat the land as his own as against the world

throughout the statutory period". The Selbys have done so in the instant case.

Given our disposition of the above issues, we do not address the Ziskas' claim they are entitled to declaratory relief.

Affirmed.

SCHULTHEIS, J., concurs.

SWEENEY, J. (concurring) — I agree with the majority that the Selbys have adversely possessed the 15.15-foot strip in dispute, but I do not agree with its analysis.

As the majority notes, the law in this area is well settled. The intention of the dedicator controls in construing a plat. *Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 269, 273, 714 P.2d 1170 (1986). The intention of the dedicator here is clear. Crown Street was intended to abut lot 12 of the original plat of Garden City Heights. That expressed intention was not given effect here because, and only because, of a surveying error — a mistake.

The original 1901 plat of the Garden Heights Addition to Walla Walla City (hereafter 1901 plat) consisted of 13 contiguous lots situated as follows:

GARDEN CITY HEIGHTS ADDITION TO WALLA WALLA CITY
1901

N
W+E
S

In 1906, the Garden City Heights Subdivision (hereafter 1906 subdivision) was platted as follows:

Subdivision of Garden City Heights
1906

Significantly, the 1906 subdivision expressly referenced the 1901 plat in defining the subdivision of Garden City Heights. The written dedication of the subdivision grant states that the " 'Subdivision of Garden City Heights' comprises Lots or Blocks one (1) to eleven (11) inclusive, of Garden City Heights. . . . the North East corner of Lot No. five (5) of Block No. three (3) of said Subdivision being identical with the North East corner of Block No. eleven (11) of said Garden City Heights." In other words, the intention of the Nixons was that the eastern border of their subdivision abut the former lot 12 of the 1901 plat. Crown Street is accordingly shown running through blocks 3 and 4 and abutting lot 12. The written dedication clearly shows that intent as does the plat plan.

The problem arises because of a surveyor's error which resulted in the subdivision falling approximately 15 feet short (too far east) of lot 12. That is demonstrated by the drawing prepared by the title officer:

N
W÷E
S

Exhibit 3
For Illustrative Purposes
Only

Technically, then, there is an inconsistency between the measurements as shown on the 1906 subdivision plat and the expressed language of the dedication which shows the intention that the subdivision abut lot 12. Because there is an inconsistency between the plat drawing, the expressed language in the 1906 subdivision plat and the surveyor's measurements, an ambiguity existed. *See Cummins v. King Cy.*, 72 Wn.2d 624, 627, 434 P.2d 588 (1967) (every part of the plat instrument is to be given effect; lines as well as words are to be considered); *see also Cook v. Hensler*, 57 Wash. 392, 399, 107 P. 178 (1910) (ambiguity exists if words and provisions are susceptible to different constructions).

Because the plat was ambiguous, surrounding circumstances may be considered to determine the intention of the dedicator. *Roeder Co. v. Burlington N., Inc., supra* at 273. In addition to the two plats, the "surrounding circumstances"

include the two subsequent deeds executed by the Nixons to correct the "discrepancy arising out of [the] error in the plotting of said subdivision".

Unfortunately for the Ziskas, however, this analysis does not make any difference in the result because the property was not developed into a street and therefore was not held by the City of Walla Walla for public use. It was held by the City in its proprietary capacity. As such it is subject to adverse possession. *Sisson v. Koelle*, 10 Wn. App. 746, 748-49, 520 P.2d 1380 (1974). As the majority notes, there is substantial evidence to support the trial court's finding of adverse possession.