IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEANNE C. DeWITT FREISE & ERIC L. FREISE, husband & wife, | ) ) ) ) | No. 79213-0-I (consolidated with No. 79214-8) |
| Respondents, | ) ) | |
| v. | ) ) | |
| | ) | DIVISION ONE |
| EAST BEACH HOLDINGS, LLC; ANDERSON VACATION PROPERTY, LLC, a Washington State limited liability company; JUDITH L. ANDERSON and ROBERT L. ANDERSON, as Co-Personal Representatives of the ESTATE OF ROBERT N. ANDERSON, | ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| REDMOND FUNDING GROUP, LLC; WELLS FARGO BANK, N.A., a national association; WASHINGTON MUTUAL BANK, a federal association, (now JP MORGAN CHASE BANK, N.A., a national association), | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ANDRUS, A.C.J. — Appellants, Anderson Vacation Property and the Estate

of Robert N. Anderson (collectively "Anderson") and East Beach Holdings LLC,

challenge the summary judgment order invalidating an easement that granted,

among other things, vehicular access across property owned by Deanne & Eric

Citations and pin cites are based on the Westlaw online version of the cited material.

Freise. Because the easement permitted driving over a septic drainfield, violating state and county law, we affirm.

## FACTS

In 1977, Robert Hastings applied for a short plat from Island County for property located on the southeast side of Whidbey Island near Clinton. The county approved and recorded the short plat on July 26, 1978, as Island County Short Plat No. 77/100.3.13/29/3E (the "Short Plat"). Hastings divided the lot into four adjacent tracts, as depicted below:



Presently, the Freises own Tract B, East Beach owns Tract C, and Anderson owns Tract D. In addition, East Beach and Anderson each own an undivided one-half interest in Tract A, which is a parking lot.[1] The very steep bank restricts the size of Tracts B, C, and D, requiring careful allotment of the useable

---

[1] See Chambers v. Rosengren, No. 54162-5-I, 2005 WL 1303531 (Wash. Ct. App. May 23, 2005) (unpublished; previous owner of Tract C and Anderson litigated whether the Short Plat conveyed fee interest in Tract A to owners of Tracts C and D). The Freises were not a party to this litigation.

space to three different functions—area for homes; area for on-site sewage systems, including septic drainfields and reserved area for a replacement drainfield if the original one fails; and area for access to the homes.

The county's plat approval in 1978 imposed conditions. Although Hastings contemplated an easement to provide access and utilities to the Tracts, the county short plat administrator accepted the Planning Department recommendation that the "[e]asement should be for pedestrian access only." Hastings' attorney agreed to this condition:

> Mr. Hastings is very opposed to installing a roadway to each of the Tracts within the area short platted. This would damage the bluff and make the Tracts nearly unusable. It is proposed that the short plat, together with pedestrian accesses as set forth in the Easement Agreements, are more than adequate to service the Tracts.

The solution was to create Tract A as a parking lot for owners of Tracts C and D, and then, as a part of the Short Plat, grant Tract C a limited pedestrian access easement over Tract B and grant Tract D a limited pedestrian access easement over both Tracts B and C for ingress and egress (the "Original Easement"). The Short Plat further provided that the owners of Tracts B and C could use the property over which the Original Easement existed for the installation and maintenance of septic tank drainfields and for any other purpose that did not "unreasonably interfere with the easement rights herein created."

Tract B was the first lot to be improved, and Island County approved its septic drainfield "as-built" in 1980. The licensed designer-installer of Tract B's system testified that, based on county Department of Health dictates, it was necessary to place Tract B's drainfield within the Original Easement. Island

County setbacks for on-site sewage disposal systems from March of 1976 to January of 1986 also required the sewage disposal systems for Tract B to be located in the Original Easement. Tract B was very small, and the installer had to set the on-site sewage system back from the property lines, the house foundation wall, the potable water pipeline, the shoreline in front of the home, and the steep slope behind it. "If that system had not been placed where it was, including being in the easement, the lot would not have been buildable."

Regulations and ordinances in effect in 1977 and 1978 also restricted the activities that could occur on top of Tract B's drainfield. Specifically, "[t]he area to be used for sewage disposal shall be selected and maintained so that it is free from encroachment by buildings and other structures. <u>The area shall not be subject to vehicular traffic</u> and shall not be covered with an impervious surface." Former WAC 246-96-100(2) (emphasis added); <u>see also</u> WAC 246-272A-0210(5)(b)(iii) ("Persons shall design and/or install a soil dispersal component[2] only if . . . [t]he area is not subject to . . . [v]ehicular traffic [among other things]."); Island County Code 8.07D.120(E)(2)(c) (same). And "[h]eavy equipment shall not be driven over the trenches during backfilling or after completion of the absorption field." Former Island County Code 807A.260 <u>Protection of Disposal Field</u>.

In late 1991, the first owners of Tract B—the Hannahs—complained to Island County that Tract D's owner—Carter—was driving over their drainfield. In

---

[2] "'Soil dispersal component' means a technology that releases effluent from a treatment component into the soil for dispersal, final treatment and recycling." WAC 246-272A-0010(2).

response, the environmental health specialist for the Island County Health Department issued Carter a cease and desist letter:



**Island County Health Department**
P.O. BOX 5000 • COUPEVILLE, WA 98239-5000

N. WHIDBEY: 206/679-7350 • S. WHIDBEY: 206/321-5111 • CAMANO: 206/629-4522

January 6, 1992

William Carter
P. O. Box 680
Clinton, Wa. 98236

Subject: Protection of Drainfields on parcels R32913-033-261,
R32913-042-255 and R32913-053-250

Dear Mr. Carter:

On December 30, 1991, the Environmental Health Department received a complaint that you have been driving over both your and your neighbors' drainfields. Driving over drainfield areas is a violation of Island County Code 8.07B.230b.,and may cause premature failure of these onsite sewage disposal systems. Please cease and desist this activity immediately.

If you have any further questions regarding this matter, please contact me at the Island County Health Department.

Sincerely,

Mel Thom, R.S.
Environmental Health Specialist

MT:bar

Certified Copy #p 567 698 167
Mailed 1/7/92

In 1996, when Anderson acquired Tract D from Carter, the then-owners of Tracts B,[3] C, and D entered into an "Easement Agreement," recorded under Auditor's File No. 96-006672 on April 22, 1996 (the "1996 Easement"). This easement allowed Tract C and D owners to drive vehicles across Tract B and Tract C and over their drainfields. It also included provisions requiring (1) Tract C and D owners to compensate Tract B for damages to Tract B's drainfield, (2) Tract D's

---

[3] The Hannahs had already sold Tract B to Bryant.

owner to compensate Tract C for damages to Tract C's drainfield, and (3) Tract C and D owners to agree not to damage Tract B's drainfield or to interfere unreasonably with the use of Tract B's drainfield. The 1996 Easement, however, omitted the sentence from the Original Easement which restricted use to pedestrian access, and it was never reviewed or approved by Island County as an amendment to the Short Plat.

In 2015, the current owners of East Beach—then only tenants of Tract C—began driving their golf cart across Tract B's drainfield. The Freises sued East Beach and Anderson to quiet title to Tract B. Specifically, the Freises alleged the 1996 Easement encumbering Tract B authorized illegal activity—driving on the septic drainfield—thereby violating Washington and Island County public policy to protect the health, safety, and welfare of their citizens. They also alleged the 1996 Easement unlawfully altered the Short Plat's conditions, which had limited access to pedestrians only.

In its answer and counterclaim, Anderson alleged it had "submit[ted] the disputes among the parties to mediation," per the dispute resolution clause in the 1996 Easement. Anderson, however, never moved to compel mediation or arbitration.

After obtaining a preliminary injunction to stop vehicular access over the easement, the Freises moved for summary judgment. They sought to make permanent the preliminary injunction, thereby prohibiting Anderson and East Beach from driving across the pedestrian-access-only easement. They also asked the court to declare the 1996 Easement void because it violated an express

condition of the Short Plat, without Island County's approval, and because its terms violated Island County ordinances and the Washington Administrative Code (WAC). The Freises presented undisputed declarations from Susan Wagner, MPH, with the Island County Health Department, and John Clark with the Island County Planning Department, both of whom testified that the 1996 Easement would not be approved by the county were it submitted for approval because it allowed driving over drainfields. Clark further testified that he had advised East Beach that "Island County does not allow driving motorized vehicles, including golf carts, over drainfields in general and over the drainfield in question in particular."

The trial court granted the Freises' motion and issued a permanent injunction.

Anderson and East Beach moved for reconsideration under CR 59(a)(4) and (7), arguing the court erred by voiding the 1996 Easement. Anderson submitted a declaration from a septic system designer, Jerry Stonebridge, who testified that alternate septic systems could be installed that would allow vehicular use of the Original Easement while providing adequate septic service. The Freises opposed reconsideration and moved to strike Stonebridge's declaration, arguing it was redundant and irrelevant. The court granted the motion to strike Stonebridge's declaration and denied Anderson's and East Beach's motions for reconsideration.

Anderson and East Beach appeal.

ANALYSIS

Anderson and East Beach contend the trial court lacked authority to enter summary judgment against them because the dispute resolution clause in the 1996

Easement required the parties to resolve their disputes via mediation and arbitration. They also challenge the permanent injunction, maintaining the Short Plat and Original Easement gave priority to vehicular access over septic drainfield use, and the Freises' septic drainfield interferes with their easement rights. They further argue the trial court erred by invalidating the Original Easement's provisions allowing for moving van and construction vehicle access to Tracts C and D, by declaring the 1996 Easement void, and by rejecting their claim that the Freises are estopped from challenging the validity of the 1996 Easement. Finally, they contend the trial court abused its discretion by striking Stonebridge's declaration and denying their motions for reconsideration.

A. Standard of Review

We review summary judgment orders de novo, performing the same inquiry as the trial court. Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). A court may grant summary judgment if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Wilkinson, 180 Wn.2d at 249. Judgment as a matter of law is warranted "if reasonable people could reach one conclusion based on the evidence when viewing the facts in the light most favorable to the nonmoving party." O.S.T. v. Regence BlueShield, 181 Wn.2d 691, 703, 335 P.3d 416 (2014).

B. The Dispute Resolution Clause in the 1996 Easement

Anderson and East Beach maintain the trial court did not have authority to enter summary judgment because the 1996 Easement contained an alternative

dispute resolution (ADR) clause requiring resolution of claims through mediation or arbitration. We disagree.

Section 14 of the 1996 Easement provided:

> Dispute Resolution. In the event there is any dispute concerning questions of law or of fact relating to this Agreement, or the duties and obligations of the Owners, which is not disposed of by agreement by the Owners, it is agreed that one or more of the Owners may submit the dispute to mediation. If mediation should fail to resolve the dispute, any Owner may submit such dispute to the Island County Superior Court for binding arbitration in accordance with the mandatory arbitration rules then in effect.

Whether the 1996 Easement required the Freises to mediate or arbitrate their claims is a question of law, reviewed de novo, and the Freises—as the party claiming this dispute is not subject to ADR—bear the burden of proof. McKee v. AT & T Corp., 164 Wn.2d 372, 383, 191 P.3d 845 (2008); Yaw v. Walla Walla School Dist. No. 140, 106 Wn.2d 408, 414, 722 P.2d 803 (1986) (where school district and employee agreed to mediation, case involved determination of contract rights); Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 769, 275 P.3d 339 (2012) (contract interpretation is question of law reviewed de novo).

First, an agreement to mediate a dispute does not divest superior courts of subject matter jurisdiction. Harting v. Barton, 101 Wn. App. 954, 960, 6 P.3d 91 (2000). Mediation is "[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." BLACK'S LAW DICTIONARY 1176 (11th ed. 2019). In some cases, parties may agree to make mediation a condition precedent to initiating litigation, but in such circumstances, failing to fulfill such a condition precedent

does not divest the court of jurisdiction over the parties' disputes. Harting, 101 Wn. App. at 961.

There is no language in the 1996 Easement making mediation compulsory or indicating that it is a condition precedent to litigation. A condition precedent is an event that must occur before the usual judicial remedies are available. Tacoma Northpark, LLC v. NW, LLC, 123 Wn. App. 73, 79, 96 P.3d 454 (2004). When a mediation provision is not unequivocally identified as a condition precedent to litigation, courts generally do not presume it to be one. Bombardier Corp. v. Nat'l R.R. Passenger Corp., 298 F. Supp. 2d 1, 4 (D.D.C. 2002). The trial court correctly concluded that mediation did not divest it of jurisdiction over the Freises' claims or preclude it from resolving the Freises' summary judgment motion.

Second, the trial court similarly correctly concluded the 1996 Easement did not mandate arbitration in this case. The arbitration clause provided that an "Owner may submit such dispute to the Island County Superior Court for binding arbitration in accordance with the mandatory arbitration rules then in effect." (Emphasis added.) Under the Uniform Arbitration Act,[4] the court decides whether a controversy is subject to an agreement to arbitrate. RCW 7.04A.060(2). Section 8 of the 1996 Easement, entitled "Remedies in the Event of Breach and Right to Lien," provided:

> (a) General Remedies. A non-breaching Owner shall be entitled to any remedy available under a statute, in law or in equity. In the event of any violation, or threatened violation, of any of the rights or obligations set forth herein, any Owner shall have the right to enjoin such violation, or threatened violation, in a court of competent jurisdiction.

---

[4] Chapter 7.04A RCW.

The parties clearly indicated their agreement to resort to superior court when seeking injunctive relief. The phrase "may submit [a] dispute . . . for binding arbitration" in section 14, must be interpreted in light of the "shall have the right to enjoin . . . in a court of competent jurisdiction" in section 8(a). The only way to reconcile these two provisions is to conclude that the parties' participation in arbitration was optional, not mandatory, when the remedy sought was an injunction, as the Freises sought here.

Although the Freises did not allege that Anderson and East Beach were violating the 1996 Easement, Anderson filed several counterclaims against the Freises, including a claim that the Freises were breaching the 1996 Easement by contending that "portions of such Agreement not to their liking are contrary to code." Anderson sought temporary and permanent injunctive relief from the court, "including an order compelling [the Freises] to remove their partial obstruction of the driveway easement at issue and to restore the driveway, and [to] compel[] them to stop trespassing." Anderson specifically pleaded that "[t]his [c]ourt has personal and subject matter jurisdiction over this Counterclaim, and venue is appropriate."

The Freises raised the invalidity of the 1996 Easement as an affirmative defense to Anderson's counterclaims. Because Anderson sought to enjoin the Freises from engaging in conduct alleged to be a violation of the 1996 Easement, and the parties had agreed that such relief could be obtained in superior court, the trial court did not err in reaching the issue of the 1996 Easement's validity rather than referring that issue to arbitration.

Moreover, the "binding arbitration" subject to "mandatory arbitration rules" referred to in the 1996 Easement is a procedure that does not exist in Island County. Island County has not instituted mandatory arbitration of civil actions under chapter 7.06 RCW. Anderson, arguing that the lack of mandatory arbitration rules is not fatal, relies on RCW 7.04A.110(1), to argue that the court could have appointed an arbitrator even though the method of arbitration the parties chose does not exist. But the court will appoint an arbitrator only "on [the] motion of a party to the arbitration proceeding." RCW 7.04A.110(1). Anderson made no such motion here. We conclude the trial court did not err in deciding the Freises' motion for summary judgment.

C. The Original Easement in the Short Plat

Anderson and East Beach next argue that under the Original Easement, as set out in the Short Plat, they had the right to some, albeit limited, vehicle ingress and egress, and the Freises' septic drainfield interferes with that access right. The trial court concluded that the language of the Original Easement purporting to permit the use of the easement for moving or construction vehicles was void and the only permissible use is for pedestrian access. The language of the Original Easement, supplemented by undisputed extrinsic evidence, supports the trial court's conclusion.

In construing the language of a short plat, the controlling consideration is the dedicator's intent as found in the plat itself. Cummins v. King County, 72 Wn.2d 624, 626, 434 P.2d 588 (1967). To ascertain the dedicator's intent, plats are

construed as a whole and every part of the instrument should be given effect.  Id. at 627.  We must avoid rejecting any part of the plat as meaningless.  Id.

The interpretation of an easement is a mixed question of law and fact. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). What the original parties intended is a question of fact, and the legal consequence of that intent is a question of law.  Id.; see also Nw. Props. Brokers Network, Inc. v. Early Dawn Estates Homeowner's Ass'n, 173 Wn. App. 778, 790, 295 P.3d 314 (2013).  The intent of the original parties to an easement is determined from the document as a whole.  Sunnyside Valley, 149 Wn.2d at 880; see also RESTATEMENT (THIRD) OF PROP.:  SERVITUDES § 4.1(1) (AM. LAW INST. 2000) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

If the plain language of a plat or easement is unambiguous, extrinsic evidence will not be considered.  Sunnyside Valley, 149 Wn.2d at 880; see also Selby v. Knudson, 77 Wn. App. 189, 194, 890 P.2d 514 (1995).  But if a plat or easement is ambiguous, extrinsic evidence is allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions.  Sunnyside Valley, 149 Wn.2d at 880; see also M.K.K.I., Inc v. Krueger, 135 Wn. App. 647, 654, 145 P.3d 411 (2006); RESTATEMENT (THIRD) OF PROP.:  SERVITUDES § 4.1 cmt. d (parties intention "ascertained from the servitude's

language interpreted in light of all the circumstances. Relevant circumstances include the location and character of the properties burdened and benefited by the servitude [and] the use made of the properties before and after creation . . . ."). The instrument is ambiguous when its terms are uncertain or capable of being understood as having more than one meaning. M.K.K.I., 135 Wn. App. at 654; see also Selby, 77 Wn. App. at 194-95.

Paragraph 2 of the Original Easement provided:

An easement is hereby established over Tract "B" for the use and benefit of the owners of Tract C and Tract D, as described in this Short Plat. Additionally, an easement is established over Tract C for the benefit of the owners of said Tract D as described in this Short Plat. Said easements to be for pedestrian access for the owners, families and guests of said Tracts C and D. Said easements may be used for vehicular ingress and egress only on a limited basis. The type of vehicular ingress and egress that is to be included within the limitations of this easement are as follows: (a) emergency equipment such as fire, police, ambulance; (b) vehicles used in moving when it is impracticable to move such goods by hand and when the loaded vehicle does not exceed __ lbs. gross weight; (c) construction vehicles used in conjunction with construction, repairs, remodeling or improving the bulkhead or residences on said Tracts C and D, provided such vehicles do not exceed __ lbs. gross weight.

(Emphasis added.) Paragraph 6 provided:

The owners of Tract B and C may utilize the real property over which the abovementioned easement exists for any purpose that is not inconsistent with the easement right herein created. Specifically, the owners of Tract B and C may utilize the property over which the easement exists for the purposes of the installation and maintenance of septic tank drainfields, for yard, or for other purposes that do not unreasonably interfere with the easement rights herein created.

Anderson and East Beach contend that under paragraph 6, the Freises' septic drainfield "unreasonably interferes" with their right to use the easement for moving or construction vehicles and, as a result, their vehicular access rights trump

the Freises' right to maintain a drainfield under the easement. There are two problems with this interpretation of the Original Easement.

First, paragraph 6 of the Original Easement explicitly permitted the owner of Tract B to install a septic drainfield under the easement. The phrase "do not unreasonably interfere with the easement rights" corresponds to "any purpose"; it does not restrict the Freises' right to use the easement for a drainfield. Contrary to Anderson's and East Beach's argument, the Freises' maintenance of the septic drainfield within the Original Easement is consistent with the plain language of the document.

Second, based on the undisputed evidence before the trial court, any provision of the Original Easement purporting to grant to Anderson and East Beach the right to drive nonemergency vehicles in the easement was correctly deemed invalid by the trial court. Subsections (b) and (c) of paragraph 2 appear to permit vehicle use in the easement for moving items too heavy to be moved by hand or for constructing, repairing, or remodeling houses on Tracts C and D. But they also appear to place weight restrictions on any moving or construction vehicles. The weight restrictions, however, were left blank.

Anderson and East Beach argue that, by leaving the weight restriction blank, the only permissible interpretation is that there is no weight restriction. The Freises, however, argue that any amount of gross weight would violate state and county laws. We agree with the Freises and the trial court that subsections (b) and (c) of paragraph 2 are ambiguous and, as a result, we may consider extrinsic evidence as to the meaning of these clauses in the Short Plat.

- 15 -

This extrinsic evidence is undisputed. The Island County Planning Department approved the Original Easement for pedestrian access only, with the sole exception being emergency vehicle use. Hastings agreed a pedestrian-only easement was adequate and, in fact, necessary given the lot restrictions. Because of the Island County setbacks for on-site sewage disposal systems during the time that Tract B's system was built, the sewage disposal system for Tract B had to be located in the Original Easement, and if it had not been, the lot would have been unbuildable. The Rosengrens, the previous owners of Tract C, acknowledged in their building permit application that their access was by a "walkway from Hastings Road." And Tract B's former owner, Pat Hannah, testified that when his wife complained about Tract D's former owner, William Carter, driving over their drainfield, the Health Department sent Carter a cease and desist letter.

The Freises also submitted unrebutted testimony from Leonard Madsen, former assistant planning director for the Island County Planning Department, regarding the provisions relating to moving and construction vehicles in the Original Easement. According to Madsen, the Short Plat Administrator who finalized Hastings' application did not complete or rewrite the language Hastings provided regarding moving and construction vehicles. As a result, Madsen testified there was an "unfortunate ambiguity" that confused readers regarding the "very clear and stated intent of the Planning Department—that the limited access-utility easement is for 'pedestrian access only,' except for the very limited and likely very rare use by official, emergency vehicles." Madsen stated that the blanks regarding the permissible weights of moving and construction vehicles could not be filled in

because "although Mr. Hastings may have wanted to have something stated in those blanks, no standard or regulatory authorization existed then or now for 'acceptable' vehicular traffic over a drainfield." He opined:

> Any driving, including driving by vehicles for "moving, construction, repairs, remodeling or removing the bulkhead or residences" was then and is now illegal and against public policy, because it compacts the drainfield and leads to its failure and attendant consequences.
>
> In addition, the two incomplete clauses [in subsections (b) and (c) of the Original Easement] are so non-specific that they are vague, ambiguous, and unmanageable and lead to never-ending evasions of the law and public policy. Because no weight limit is set forth, some might incorrectly argue that any vehicle that passes over the easement is an authorized user of the easement simply by carrying hand tools or a moving sign. Clearly that was neither the existing law nor the intent of the Planning Department and the approved Short Plat.

Madsen concluded that leaving out the maximum allowable gross weights meant the proposal for allowing nonemergency vehicles was never adopted and endorsed by the regulators or authorized by the Short Plat. This testimony is consistent with the applicable regulations and ordinances—specifically, "[t]he [On-Site Sewage System (OSS)] owner is responsible for operating, monitoring, and maintaining the OSS to minimize the risk of failure, and to accomplish this purpose, shall . . . [p]rotect the OSS area and the reserve area from . . . [s]oil compaction, for example by vehicular traffic or livestock." WAC 246-272A-0270(1)(g)(iii); see also Island County Code 8.07D.280(A)(7)(c).

We must interpret easements to avoid their invalidity. RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.1 & cmt. j. Based on the regulations and county ordinances, along with Madsen's unrebutted testimony, the vehicular use contemplated by subsections (b) and (c) violates state and county law. Because

- 17 -

the tracts were limited in their capacity for access, on-site sewage disposal, and home sites, we conclude the only valid exception to the Original Easement's pedestrian-only access is for emergency vehicles. Thus, the trial court did not err in invalidating subsections (b) and (c) of the Original Easement.

### D. The 1996 Easement

If the only valid exception to the Original Easement's pedestrian-only access is for emergency vehicles, it logically follows that the 1996 Easement granting general passenger vehicle access is similarly void. Because the parties sought to contract for something prohibited by law, we conclude the trial court did not err by declaring the 1996 Easement void.[5]

Whether the 1996 Easement is an illegal servitude—one that is prohibited by statute or governmental regulation—is a question of law reviewed de novo. See Nw. Props. Brokers Network, Inc., 173 Wn. App. at 789; RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 3.1 cmt. c. The freedom of landowners to contract for easements as they wish "may not exceed limits set by legislation, state and federal

---

[5] The trial court concluded the 1996 Easement was void for lack of consideration. We disagree. The agreement included new mutual promises for repairing damage to and maintaining the Original Easement and drainfields—protections in addition to those provided in the Original Easement. See Trotzer v. Vig, 149 Wn. App. 594, 605-06, 203 P.3d 1056 (2009) ("'Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange.'") (quoting King v. Riveland, 125 Wn.2d 500, 505, 886 P.2d 160 (1994))). But "[t]his court may affirm the trial court's ultimate decision on any grounds established by the pleadings and supported by the record." Verbeek Props., LLC v. GreenCo Envtl., Inc., 159 Wn. App. 82, 90, 246 P.3d 205 (2010).

Furthermore, while the 1996 Easement contains a severability clause, the essential part of the 1996 Easement was the right to drive passenger vehicles over Tract B to Tracts C and D. Unenforceability of the essential part of the agreement renders the entire agreement unenforceable. RESTATEMENT (SECOND) OF CONTRACTS §§ 183 cmt. c, 184 (AM. LAW INST. 1981). The purpose of an easement agreement is that the "parties enter[] into contractual promises with the other or with each other to perform acts with respect to the easement." 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 7.3 (May 2019 Update). Because the easement is void, the portions of the agreement relating to repair and maintenance are irrelevant and severability is pointless.

constitutions, and public policy." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 3.1 cmt. a.

The 1996 Easement expressly allows vehicular traffic over Tract B's septic drainfield. But Washington State regulations and Island County Code both provide that on-site sewage systems must be protected from soil compaction, which can be caused by vehicular traffic, or even livestock. WAC 246-272A-0270(1)(g)(iii); Island County Code 8.07D.280(A)(7)(c); see also WAC 246-272A-0210(5)(b)(iii) ("Persons shall design and/or install a soil dispersal component only if . . . [t]he area is not subject to . . . [v]ehicular traffic [among other things].").

The Freises presented declarations from Susan Wagner, MPH with the Island County Health Department and John Clark with the Island County Planning Department, both of whom testified that the 1996 Easement would not be approved by the county were it submitted for approval today because it allows driving over drainfields. Wagner also testified that "[a]ny driving compacts soil, especially when the ground is wet. Drainfields do not last forever and there are significant public health and safety reasons[—such as diseases, like dysentery, resulting from direct exposure to pathogens—]for protecting [drainfields] from damage and premature failure." And Clark further testified that he had advised East Beach that "Island County does not allow driving motorized vehicles, including golf carts, over drainfields in general and over the drainfield in question in particular." Therefore, the 1996 Easement is illegal because it is prohibited by both Washington State regulations and Island County Code.

In addition, the 1996 Easement, which expanded access to passenger vehicles across Tract B, substantially changed the Short Plat's provision for pedestrian access only. "Changes that permit something expressly prohibited by the notes on [a] short plat, are ineffective unless the plat is formally amended as provided for in RCW 58.17.215." Hanna v. Margitan, 193 Wn. App. 596, 608, 373 P.3d 300 (2016). It is undisputed that the parties to the 1996 Easement failed to seek an amendment to the Short Plat pursuant to RCW 58.17.215. It is therefore ineffective for this reason as well.

Even viewing the facts in the light most favorable to Anderson and East Beach as the nonmoving parties, we conclude the trial court did not err by granting the Freises' motion for summary judgment. The 1996 Easement is void as a matter of law because it granted vehicular access over septic drainfields in violation of Washington State regulations, in violation of Island County ordinances, and in violation of the Original Easement memorialized in the Short Plat without having complied with the requirements of RCW 58.17.215.[6]

E. Permanent Injunction

Next, Anderson and East Beach argue the trial court erred by granting the Freises' request for a permanent injunction because the Freises had not demonstrated that driving across their drainfield had caused any damage. We are unpersuaded by this argument.

---

[6] We reject Anderson's argument that the Freises should be equitably estopped from seeking to invalidate an agreement that their predecessor-in-interest entered into. We disagree. Anderson could not have reasonably relied on the 1996 Easement given its unlawful provisions.

We review for an abuse of discretion a trial court's decision to grant an injunction and its decision regarding the terms of the injunction. Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000). "A trial court necessarily abuses its discretion if the decision is based upon untenable grounds, or the decision is manifestly unreasonable or arbitrary." Id. In seeking a permanent injunction, the Freises must show (1) that they have a clear legal or equitable right, (2) that they have a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to them. Id. (quotations and citations omitted). Because injunctions are addressed to the equitable powers of the court, these criteria must be examined in light of equity including balancing the relative interests of the parties and, if appropriate, the interests of the public. Tyler Pipe Indus., Inc. v. Dep't of Revenue, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982).

The Freises showed they had a clear legal or equitable right in protecting their septic drainfield from compaction and deterioration. They also established a well-grounded fear of immediate invasion of that right—especially, given the animosity demonstrated by the East Beach litigants and their refusal to abide by the Freises' request to stop driving on their drainfield.

The Freises also presented declaration testimony from Susan Wagner, MPH, with the Island County Health Department. Her testimony more than supports the proposition that continued vehicle traffic over Tract B's septic drainfield will result in actual and substantial injury to the Freises. Wagner testified that a drainfield needs adequate oxygen to "breath[e]" to support the bacteria

growth—specifically, aerobic bacteria—that processes the liquid waste and sewage. Without sufficient aerobic bacteria, she testified, the unprocessed waste products will eventually overwhelm the system, clog soil pores, and "cause inadequately treated waste water to leach into nearby surface and ground waters." According to Wagner,

> [s]urfacing untreated waste water allows direct contact with pathogenic bacteria, viruses and parasites. Adequate oxygen cannot get into the ground where it is needed if the ground over the drainfield is compacted or covered by an impervious surface, such as a slab or compacted gravel and soils.
>
> . . . .
>
> Any driving compacts soil, especially when the ground is wet. Drainfields do not last forever and there are significant public health and safety reasons for protecting them from damage and premature failure. It is well understood in the public health field that inadequate treatment of sewage allows bacteria, viruses, and other disease-causing pathogens to enter surface and ground water. Hepatitis, dysentery, and other disease may result from direct exposure to pathogens.

Based on this evidence, we conclude the court did not abuse its discretion in permanently enjoining all vehicular traffic—except emergency vehicles—over the Original Easement within Tract B.

F. Stonebridge Declaration and Motions for Reconsideration

Finally, Anderson argues the trial court erred in striking the declaration of septic designer Jerry Stonebridge and in denying its and East Beach's motions for reconsideration. We reject both arguments.

We review the trial court's ruling on a motion to strike evidence for an abuse of discretion. Billings v. Town of Steilacoom, 2 Wn. App. 2d 1, 33, 408 P.3d 1123 (2017). And a motion for reconsideration based upon CR 59 is addressed to the

sound discretion of the trial court, whose judgment will not be reversed absent a showing of manifest abuse. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

When it sought reconsideration, Anderson submitted a declaration signed by Jerry Stonebridge, a state and county licensed designer and installer of on-site sewage systems with over 40 years of experience. He had been traveling out of the country at the time of the summary judgment proceeding, so Anderson could not obtain a signature from Stonebridge at that time. Nevertheless, East Beach had previously submitted, as an exhibit to its response to the Freises' summary judgment motion, documents authored by Stonebridge in which he developed various "scenarios for an alternate septic system that would allow motorized use of the driveway while providing adequate septic service."

The Freises moved to strike Stonebridge's subsequent declaration as redundant because the content of his testimony had already been submitted to the court and considered by it on summary judgment. They also argued the evidence was immaterial because whether the drainfield could be relocated based on updated technologies was not relevant to the legal issues of whether state and county law prohibited vehicular access over their existing drainfield. The court struck the declaration because the information contained in the Stonebridge declaration was neither new nor material.

We see no abuse of discretion here. While the narrative portion of Stonebridge's declaration and some of his drawings were not included in the materials submitted at summary judgment, the three scenarios were included. The

information had already been presented in different format to the court, and we conclude the court did not abuse its discretion in striking the declaration because it was not newly discovered evidence under CR 59(a)(4).

Because the trial court did not err in granting the Freises' motion for summary judgment and in imposing a permanent injunction, we necessarily conclude the trial court did not abuse its discretion by denying the motions for reconsideration.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_Dwyer, J._                    _Appelwick, J._